Bobbie ROBINSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 2880.

Supreme Court of Alaska.

April 28, 1978.

Barbara J. Miracle, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Ivan Lawner and Monica Jenicek, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, Chief Justice, and RABINOWITZ and CONNOR, Justices.

RABINOWITZ, Justice.

Bobbie Robinson was convicted of possession of cocaine, a violation of AS 17.10.010, after a jury trial. Robinson's primary contention in this appeal centers on the denial by the superior court of his motion to suppress evidence obtained as the result of an allegedly unconstitutional search and seizure.[1]

On the night of October 22, 1975, the Anchorage Police Department received a call from the manager of the Gold Rush Hotel concerning a registered guest, Bobbie Davis. When they arrived at the hotel, the manager motioned Investigator Jones and Investigator Needham into a room adjoining the room registered to Bobbie Davis. The manager gave them information which aroused their suspicions that there might be some sort of illegal activity occurring in Davis' room. Jones testified at the suppression hearing that after he spoke with the manager, he suspected that the man registered as "Bobbie Davis" was, in fact, Bobbie Robinson, a person with whom Jones was previously acquainted. The police officers decided to conduct a routine investigation of the activities within the room.[2]

As Jones stood outside the room registered to Davis preparing to knock, the door opened and a woman started to emerge. When Jones showed her his badge, she slammed the door, bolted and chained it, and began to yell "police." Jones testified that he could hear a great deal of activity in the room. Jones knocked on the door and a second woman, without opening the door, asked who was there. Jones responded that they were police officers and requested that she open the door. The woman, Ms. Chatman, opened the door approximately eight inches. Jones asked to speak with Mr. Davis; Chatman told him that

Davis was in the bathroom. When Jones indicated that he would wait, Chatman began to close the door. Jones asked that it be left open and Chatman, who had a small child holding her leg, told the officers that they could come in so that the open door would not create a draft on the child. From their position in the foyer of the hotel room,[3] the officers could see a strainer and a glass jar containing matches and some short straws. The officers suspected that these items were drug paraphernalia.

About 30 seconds after the officers entered the room, Robinson emerged from the bathroom. Jones testified:

> Mr. Robinson stepped out and said hello to me. I said hello to him. He said what do you want? And I said, well, I'm here in response to the hotel. Mr. Davis is registered here. You obviously aren't Mr. Davis and we both know that. He laughed and turned around and walked over and sat down in the chair.

Robinson was not wearing a shirt; Jones testified that he could see the top of what looked like a prophylactic protruding from the top of Robinson's belt. After Robinson sat down, Needham picked up the strainer. Robinson jumped up and took the strainer from Needham, saying, "You can't do that." Jones saw the prophylactic which contained 1.4 grams of cocaine on the chair where Robinson had been sitting. Needham picked it up and Jones placed Robinson under arrest.

The United States Supreme Court has recognized that hotel rooms as well as dwellings fall within the protections of the fourth amendment. In *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, *rehearing denied*, 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964), the police had

1. Robinson was sentenced to 10 years imprisonment with 5 years suspended; he has appealed the excessiveness of this sentence. Because of our disposition of the primary issue, we do not reach the sentence appeal issues at this time.

2. Jones testified:
   We check these things out routinely for a number of different reasons. Number 1, to

determine who is in what room so—and if in fact it is somebody doing something illegal, so that they know that we know that they're in there, which normally prompts them to move. This is why the hotels call us. We do not regularly make arrests in . . . similar situations.

3. This room in the Gold Rush Hotel is approximately 12 feet by 14 feet.

focused their investigation on Stoner because of a checkbook found near the scene of a robbery. The checkbook stubs indicated that several checks had been made out to a hotel. Upon discovering that Stoner was registered at the hotel and was out of his room, the police officers requested the night clerk's permission to enter Stoner's room. The clerk gave his consent and opened the door. The officers entered and made a thorough search of the room and its contents, finding evidence incriminating Stoner. The Supreme Court reversed Stoner's conviction, ruling that it had been based on a warrantless search not falling within one of the recognized exceptions to the warrant requirement. The Supreme Court emphasized that the night clerk was not able to waive Stoner's constitutional rights despite the clerk's clear and unambiguous consent to the search. The Supreme Court concluded:

> No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. It follows that this search without a warrant was unlawful. (citations omitted) [4]

There is no contention in this case that Robinson did not have an actual and reasonable expectation of privacy in his hotel room.[5] Thus, our analysis of this matter must begin with the premise that this warrantless search is per se unreasonable unless it falls within one of the narrowly defined exceptions to the warrant requirement of the fourth amendment.[6] The state has argued that the consent allegedly given by either Robinson or Chatman validates this search. The superior court found that the state did not adequately establish Ms. Chatman's relationship to Robinson, or to the hotel room, in order to prove a valid third party consent. However, the superior court held that Robinson's failure to object to the presence of the officers constituted consent to the search. More particularly, the superior court stated:

> [U]sually the courts do inquire quite searchingly into the power of the person consenting to a search, and had Mr. Robinson not been present I certainly would in this instance had—had the observations . . . made inside the premises . . . rested wholly upon the admission into the room by the woman whose relationship has not been clearly established here, I feel that the court would under those circumstances have to suppress the evidence. But Mr. Robinson [was] there, having the opportunity to intercept further entry into the premises
>
> . . . . . . . . . [The police] were in the foyer . . . And . . . their further continued incursion, as it were, into the rest of the room was accomplished with Mr. Robinson's knowledge and at least implied consent in that he . . . did not ask them to leave, did not ask them to secure a warrant.

First, we will address the issue of the consent purportedly given to the officers by Robinson. The superior court held that Robinson's failure to request that the officers leave when he emerged from the bathroom constituted consent to their entry

---

**4.** *Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856, 861, *rehearing denied,* 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303 (1964). *See United States v. Jeffers,* 342 U.S. 48, 51–52, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *Eng Fung Jem v. United States,* 281 F.2d 803, 805 (9th Cir. 1960).

**5.** *See, e. g., Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587–88 (1967) (Harlan, J., concurring); *Woods & Rohde, Inc. v. State,* 565 P.2d 138, 149 (Alaska 1977); *Smith v. State,* 510 P.2d 793, 797 (Alaska 1973).

**6.** *See, e. g., Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 29 L.Ed.2d 564, 576 (1971); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Schraff v. State,* 544 P.2d 834, 838 (Alaska 1975); *Erickson v. State,* 507 P.2d 508, 514 (Alaska 1973).

into the hotel room. In order to show that voluntary consent to search was obtained, the state must show that the consent was unequivocal, specific, intelligently given and uncontaminated by duress or coercion.[7] We have concluded that the burden was not met in this case.[8] The evidence shows that Robinson asked what the officers were doing when he emerged from the bathroom. He objected when Needham picked up the strainer. The only thing he did not do was request that the officers leave. While there are circumstances in which an authorized person's valid consent to police presence could supersede an initial invalid consent given by an unauthorized third party,[9] we are not presented with such circumstances here. Robinson was confronted with the *fait accompli* of the officers' presence; he did not indicate his consent to their presence in any way except by silence. We have held that consent is not lightly to be inferred.[10] If we were to hold that Robinson's failure to demand that the officers leave amounted to consent, it would mean that consent could be inferred from slight, rather than preponderating, circumstances. Accordingly, we hold that the state did not meet its burden of showing consent to this warrantless search, and the superior court erred in denying the motion to suppress on the ground of Robinson's consent.

We next address the effect of the consent to enter, allegedly given the officers by Ms. Chatman. In *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974), the United States Supreme Court held that permission to search may be obtained from a third party who possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." The Court went on to explain the type of authority which is necessary to validate a third party consent:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.[11]

7. *Erickson v. State,* 507 P.2d 508, 515 (Alaska 1973); *Sleziak v. State,* 454 P.2d 252, 257–58 (Alaska 1969), *cert. denied,* 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969).

8. Because we have concluded that the state did not prove that Robinson consented to this entry, we need not decide whether the Alaska Constitution requires that in order to validate any consent allegedly given, the party must be first advised of the right to refuse consent to a warrantless search. *See Sleziak v. State,* 454 P.2d 252, 259–60 (Alaska 1969), *cert. denied,* 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969). The Supreme Court of the United States held in *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 863 (1973), that such warnings were not required by the federal constitution. However, we are not bound by that interpretation in interpreting our own constitution. *See, e. g., Blue v. State,* 558 P.2d 636, 641 (Alaska 1977); *Lemon v. State,* 514 P.2d 1151, 1154 n. 5 (Alaska 1973); *Baker v. City of Fairbanks,* 471 P.2d 386, 401–02 (Alaska 1970).

9. For example, if Robinson had expressly consented to the officers' presence or to a subsequent search, Ms. Chatman's assumed lack of authority would present no problem.

10. *Erickson v. State,* 507 P.2d 508, 515 (Alaska 1973); *Sleziak v. State,* 454 P.2d 252, 257–58 (Alaska 1969), *cert. denied,* 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969).

11. We reject the state's argument that a less stringent standard should be applied to an entry than to other searches. The entry of the officers was a search within the fourth amendment protections. *See, e. g., Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436, 440 (1948); *Ferguson v. State,* 488 P.2d 1032, 1037 (Alaska 1971). As we said in *State v. Spietz,* 531 P.2d 521, 525 (Alaska 1975):

> A door of the home represents a firm constitutional barrier whether or not it is open. The front doorway . . . was a constitutional barrier to any search or seizure not based either on a valid warrant or on one of the narrowly defined exceptions.

*Id.* at n. 7. In *Matlock,* the trial court held that as a prerequisite to the admissibility of the questioned evidence the prosecution had to prove initially that it reasonably appeared to the searching officers that the third party's consent would bind the defendant, and secondly, that the government must show that facts did exist immediately prior to the search which rendered the third party's consent binding.[12] Concerning the second requirement, the district court found that the government had failed to prove that Mrs. Graff had actual authority to consent to a search. The district court held that although Mrs. Graff's statements to the officers that she and respondent occupied the east bedroom were admissible to prove the good faith belief of the officers, they were nevertheless extra-judicial statements inadmissible to prove the truth of the facts therein averred. The Court of Appeals affirmed and the Supreme Court of the United States reversed. The Supreme Court observed that the rules of evidence normally applicable in criminal trials do not generally govern hearings before a judge to determine evidentiary questions.[13] In this regard, the Supreme Court stated in part:

> However that may be, certainly there should be no automatic rule against the reception of hearsay evidence in such proceedings, and it seems equally clear to us that the trial judge should not have excluded Mrs. Graff's statements in the circumstances presented here.[14]

The court further found no reason for the district court to have distrusted the evidence and excluded Mrs. Graff's declarations. Given the admissibility of her statements, the Supreme Court concluded that the prosecution had sustained its burden of proving by a preponderance of the evidence that Mrs. Graff's consent was legally sufficient.[15]

■ Our review of the evidence contained in the record before us reveals that the state failed to prove by a preponderance of the evidence that Ms. Chatman had the authority to consent to the entry of the officers. In short, the state did not demonstrate that Ms. Chatman had joint access to, or control of, the hotel room for any purpose. Anticipating the foregoing conclusions, the state makes the further contention that relevant evidence of Ms. Chatman's relationship with Robinson was improperly excluded as hearsay under the reasoning of *Matlock.* Although the issue is not altogether free from doubt, we agree that the superior court erred in sustaining the hearsay objections, and thereby precluded the state from proving Ms. Chatman's authority regarding the premises in question. We thus conclude that this aspect of the matter should be remanded to the superior court to conduct a further suppression hearing for the purpose of determining whether Ms. Chatman had the authority to give permission or consent to the entry of the officers into the hotel room, as well as to make the further determination whether or not at the time in question it reasonably appeared to the officers that Ms. Chatman's consent would bind Robinson.

In light of the foregoing, the case is remanded to the superior court with directions to conduct a further suppression hearing in accordance with this opinion. At the conclusion of such a hearing, the superi-

---

12. In *Matlock* the third party whose consent was in issue was Mrs. Graff, a woman with whom Matlock shared a bedroom. The district court found the first requirement satisfied because of the woman's residence in the house for a significant period of time and her presence in the house prior to the search, and because of her statement to the officers that she and the respondent occupied the east bedroom.

13. *United States v. Matlock,* 415 U.S. 164, 172–73, 94 S.Ct. 988, 993–94, 39 L.Ed.2d 242, 250 (1974).

14. *Id.,* 415 U.S. at 175, 94 S.Ct. at 995, 39 L.Ed.2d at 252. In reaching this conclusion, the Supreme Court relied on the then proposed Rules 104(b) and 1101(d)(1), Federal Rules of Evidence. *Id.,* 415 U.S. at 174 n. 10 and 11, 94 S.Ct. at 995, 39 L.Ed.2d at 251 n. 10 and 11.

15. *Id.,* 415 U.S. at 177, 94 S.Ct. at 996, 39 L.Ed.2d at 253. Despite this holding, the Supreme Court preferred that the district court first reconsider the suppressing of the evidence in the light of its opinion and holdings therein.

or court is to make and enter findings of fact and conclusions of law.[16]

Remanded with instructions.

BOOCHEVER, Chief Justice, concurring.

I agree with the majority opinion with the exception of the statement contained in Footnote 11 applying the same standard to a request to enter premises as to a request to search premises. The authorities cited in Footnote 11 do not deal specifically with a distinction between authorizing an entry and authorizing a search. I believe that situations may well arise where an occupant of premises has an implied authority to consent to the entry of those premises by police officers but would not have the implied authority to consent to a search. A search in the sense of opening drawers and delving into hidden portions of the premises involves a much greater invasion of privacy than the mere admission to the premises themselves.[1] The question that I believe is relevant in this case is whether Ms. Chatman had authority to consent to the officer's entry into the hotel room. No search was made as the items subsequently seized were in plain view, assuming that the entry into the room was permissible.[2] The case is distinguishable from *State v. Spietz*, 531 P.2d 521 (Alaska 1975), in that no one consented to the officer's entering the home in the *Spietz* case, and therefore there was no right to go into the home to seize items that could be seen from outside the home.

---

16. Jurisdiction of the appeal is retained pending receipt of the superior court's findings of fact and conclusions of law based on the additional suppression hearing ordered by virtue of this opinion.

1. See *United States v. Bussey*, 507 F.2d 1096, 1097 (9th Cir. 1974) (confederate's consent to entry and search of motel room occupied by defendant and confederate did not extend to defendant's personal luggage); *Davis v. People of State of California*, 341 F.2d 982, 985 (9th Cir. 1965) (consent to enter motel room by third party did not extend to search of defendant's person); *Holzhey v. United States*, 223 F.2d 823, 826 (5th Cir. 1955) (consent of daughter and son-in-law to enter and search their premises where accused lived did not authorize search of accused's locked personal effects).

2. *Anderson v. State*, 555 P.2d 251, 256 (Alaska 1976); *Daygee v. State*, 514 P.2d 1159, 1162 (Alaska 1973).