**Timothy P. NIX, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Allan PERRY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. 4413, 4414.**

Supreme Court of Alaska.

Jan. 16, 1981.

William P. Bryson, Drathman, Weidner & Bryson, Anchorage, for appellant Nix.

Bruce Heller, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant Perry.

Timothy Petumenos, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

On November 10, 1977, the Anchorage residence of Mr. and Mrs. Gary McDaniel was burglarized. Mrs. McDaniel told a co-worker, Debbie Miller, what was taken.[1] Ms. Miller told her that she had seen property fitting that description in the apartment of her brother, Ronald Long. This was reported to the police.

In order to gain sufficient information to obtain a search warrant, Officer Mark Headlough, dressed in plain clothes, went with Miller to her brother's apartment. Miller knocked on the door and both she and Headlough entered at the invitation of Mike Lawyer, a friend of Long's who occasionally spent the night at the apartment. Long was asleep. Miller explained to Lawyer that she had come to leave some money for her brother. Headlough was not introduced to Lawyer and did not speak with him. Miller went into the bedroom where her brother was asleep, decided not to awaken him, left some money on the dresser and returned to the area near the door of the apartment where Headlough had been waiting. She and Headlough then left. The entire transaction took less than five minutes.

From his position near the door, Headlough was able to observe the items stolen from the McDaniel residence arranged on open shelves. Based on his observations, a search warrant was obtained and executed the same day. The search disclosed property stolen from the residence of Dennis O'Brien as well as from the McDaniels'. The apartment was occupied by Long, the defendants, Nix, and Perry, and a fourth person, DeTemple. Based on this search Nix and Perry were arrested and eventually indicted for burglary of the McDaniel and O'Brien residences and for malicious destruction of property contained in the O'Brien home.

The defendants moved to suppress the evidence seized as a result of the search and the fruits of that evidence. Their motions were denied. Subsequently, they entered pleas of *nolo contendere* on all counts, reserving their right to appeal the legality of the warrantless entry of their residence.[2]

■ Among the recognized exceptions to the rule that a search must rest upon a warrant are searches conducted pursuant to a valid consent.[3] However, to be effective a consent to search must be voluntary[4] and must be given by one who has authority to give it.[5] In this case the defendants contend that Lawyer did not voluntarily consent to Headlough's entry, because he did not know Headlough was a policeman, and further, that Lawyer was not authorized to permit Headlough to come in.

We turn first to the question of whether Lawyer's consent was involuntary because he did not knew Headlough was a policeman. Cases from other jurisdictions have generally held that one's consent to entry by a policeman is not to be regarded as involuntary merely because the policeman's identity is either not revealed or affirmatively misrepresented.[6] We have recog-

---

1. The property taken included stereo equipment and statues of horses' heads.

2. This procedure has been approved as to dispositive issues in *Oveson v. Municipality of Anchorage*, 574 P.2d 801 (Alaska 1978) and *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

3. *Davis v. United States*, 328 U.S. 582, 593–94, 66 S.Ct. 1256, 1261, 90 L.Ed. 1453, 1460 (1946); *Zap v. United States*, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477, 1483 (1946); *Schraff v. State*, 544 P.2d 834, 841 (Alaska 1975).

4. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

5. *United States v. Matlock*, 415 U.S. 164, 170–72, 94 S.Ct. 988, 992, 39 L.Ed.2d 242, 249–50 (1974); *Robinson v. State*, 578 P.2d 141, 144–45 (Alaska 1978).

6. *State v. Goeller*, 264 N.W.2d 472 (N.D.1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978) (agent posing as invitee to defendant's party); *United States v. Raines*, 536 F.2d 796 (8th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976) (police officer posing as acquaintance of defendant's friend); *United States v. Ressler*, 536 F.2d 208 (7th Cir. 1976) (police officers posing as acquaintances); and *People v. Nisser*, 189 Colo.

nized that the use of undercover police agents "is a highly necessary tool in fighting crime," *State v. Glass*, 583 P.2d 872, 880 (Alaska 1978) and that "law enforcement officials can, and often must, employ deceptive measures in order to detect and apprehend those engaged in criminal conduct ...." *Pascu v. State*, 577 P.2d 1064, 1068 (Alaska 1978).

Of course, not every ruse or guise is permissible. Some, such as gaining entry by pretending to be an employee of a gas company acting on the report of a gas leak,[7] are regarded as too unfair to be tolerated. The United States Supreme Court observed in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) that implicit in the concept of voluntariness is a balance between the need for effective criminal law enforcement at one end of the scale and, at the other, "society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness, and that the possibility of unfair and even brutal police tactics poses a real and serious threat to civilized notions of justice." 412 U.S. at 224–25, 93 S.Ct. at 2046, 36 L.Ed.2d at 861. As we have observed in the context of entrapment, a special instance of police trickery, "[t]he question is really whether that conduct falls below an acceptable standard for the fair and honorable administration of justice," *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978).

■ In this case, the standard of fairness was not violated. No affirmative misrepresentation of Officer Headlough's identity was made. He was able to view the stolen property, openly displayed in the common area of the apartment, just as Ms. Miller and the other guests of those occupying the apartment had been able to. The limits of Lawyer's consent were not exceeded by venturing into private rooms or prying into closed containers. Authorities in which similar police conduct has been found appropriate include *United States v. Glassel*, 488 F.2d 143 (9th Cir. 1973); *United States v. Haden*, 397 F.2d 460 (7th Cir. 1968), *cert. denied*, 396 U.S. 1027, 90 S.Ct. 574, 24 L.Ed.2d 523 (1970); *People v. Manieri*, 373 N.Y.S.2d 504 (N.Y.County Ct. 1975).

We now must determine whether Lawyer was appropriately authorized to permit Headlough to enter. The first question is whether Lawyer must have had actual authority from one of the regular occupants to permit Miller and her unknown acquaintance to enter, or merely apparent authority, in the sense that it reasonably appeared to Headlough that Lawyer had the right to invite Miller and him inside the premises. In *Robinson v. State*, 578 P.2d 141 (Alaska 1978) we issued a remand to the trial court with directions to conduct further hearings to determine both the actual and the apparent authority of a third party who had permitted a police entry. However, in *Robinson* we retained jurisdiction of the appeal pending receipt of the superior court's findings and did not resolve the question whether the third party's consent had to be based on actual authority or apparent authority, or both.[8]

■ We now align ourselves with those authorities, representing the majority view, which hold that apparent authority alone is required.[9] We adopt this view because it is more consistent with the fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances. Moreover, the exclusionary rule imposed where the fourth amendment is violated is thought to operate to deter police from unreasonable searches and seizures. Obviously, there can be no deterrent effect

---

471, 542 P.2d 84 (1975) (police officer posing as drug buyer and acquaintance).

**7.** *People v. Jefferson*, 43 A.D.2d 112, 350 N.Y. S.2d 3 (1973); W. LaFave, Search and Seizure § 8.2, at 683 (1978).

**8.** On remand *Robinson* was dismissed.

**9.** *United States v. Peterson*, 524 F.2d 167 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975); *United States v. Grigsby*, 367 F.Supp. 900 (E.D.Ky. 1973); *State v. Miller*, 159 N.J.Super. 552, 388 A.2d 993 (1978); *People v. Gorg*, 45 Cal.2d 776, 291 P.2d 469 (1955).

where the police believe that they are acting reasonably and lawfully and it is only be a hindsight determination that actual authority is found to be wanting. This does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party's assertions of authority if those assertions appear unreasonable. *See* LaFave, *supra* note 7, § 8.3 at 722–725.

 We think that there can be little question that apparent authority existed here. Officer Headlough reasonably believed that Lawyer had the authority to allow Miller, the sister of his host, and her companion to enter the premises. It would be extraordinary if any house guest lacked such authority under similar circumstances. As LaFave observes:

> [N]ote must be taken of a case . . . where the guest is actually present inside the premises at the time of the giving of the consent and the consent is merely to a police entry of the premises into an area where a visitor would normally be received. There is sound authority that, at least when the guest is more than a casual visitor and "had the run of the house," his lesser interest in the premises is sufficient to render that limited consent effective. It may also be suggested that the apparent authority doctrine may come into play in these circumstances, so that the police are entitled to assume without specific inquiry as to that person's status that one who answers their knock on the door has the authority to let them enter.

LaFave, *supra*, § 8.5 at 759.

For these reasons the judgment is AFFIRMED.

DIMOND, Senior Justice, dissents.

DIMOND, Senior Justice, dissenting.

I dissent for the reasons set forth in my concurring opinion in *Pascu v. State*, 577 P.2d 1064, 1069 (Alaska 1978). In the case at bar, the police used subterfuge and deceit to gain entry into the defendants' apartment so that they could acquire probable cause to have a search warrant issued.

While the deceptive measures employed in *Pascu* were more dramatic, the principle remains the same. As I stated in *Pascu*, "[T]his means of obtaining a desired end is distasteful and objectionable, because it eventually undermines, rather than enhances, the high standards of conduct in the administration of justice required of law enforcement agencies and the courts of this state." 577 P.2d at 1069–70. I would reverse the judgment because I believe the deception used by the police rendered Lawyer's consent involuntary and, therefore, the evidence seized from the apartment should have been suppressed.