**UNITED STATES, Appellee,**

**v.**

**Specialist Five Eric E. WARD, SSN 263–27–4599, United States Army, Appellant.**

**SPCM 15384.**

U. S. Army Court of Military Review.

22 Jan. 1982.

as part of his duties routinely advised Article     32 officers.

Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel Jerome E. Kelly, JAGC, and Captain Courtney B. Wheeler, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Major Michael L. DeBusk, JAGC, and Captain Gary L. Hoffman, JAGC, were on the pleadings for appellee.

Before FULTON, McKAY and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for review required by Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (1976). The appellant contends that because of inadequate identification the military judge erred in admitting into evidence marihuana allegedly sold by him. He also contends that other marihuana seized in a search of his family quarters was admitted as evidence erroneously because it was the fruit of an earlier illegal entry that led to his warrantless apprehension. He asks that the findings of guilty to the resulting charges be set aside and dismissed.

The appellant was tried by a special court-martial (judge alone) and convicted, contrary to his pleas, of wrongfully selling and possessing marihuana and of escape from lawful custody in violation of Articles 134 and 95, UCMJ, 10 U.S.C. §§ 934 and 895, respectively. He was sentenced to be discharged from the service with a bad-conduct discharge, to be confined at hard labor for three months, to be reduced to the grade of Private E–1 and to forfeit $250.00 per month for a period of three months. The convening authority approved the findings and sentence.

On 29 February 1980, appellant approached a Private Moss, and asked him if he wanted to buy some marihuana. After agreeing on a price, Moss went to a friend, Private Austin, to see if he would join him in the purchase. Austin agreed and when Moss returned to the mess hall, appellant told him to give the money to a Private Llanos and that he would receive the marihuana that night or the following morning. The next day, following appellant's instructions, Moss went to the unit orderly room and received two bags of what he believed to be marihuana from Llanos. Moss took the two bags to Austin's room. Later that day Moss and Austin removed some of the substance from the bags and smoked it. Moss had smoked marihuana on previous occasions and the effect he obtained from smoking the substance purchased from appellant was similar to that previously achieved from smoking marihuana.

On 2 March, Lieutenant Lunsford, appellant's company commander, was investigating the use of marihuana in his unit. Upon learning that Austin was purported to have marihuana in his possession, Lunsford persuaded Austin to turn over the bags and their contents that Moss had obtained from Llanos. Moss was called into Lunsford's office where he identified the bags as those he had purchased from appellant.

Lunsford turned the bags over to Special Agent Ruiz of the Fort Benning Criminal Investigation Division. Ruiz weighed the two bags, tied them together, and released them to the evidence custodian. The substance inside was subsequently analyzed and found to be marihuana by the U.S. Army Criminal Investigation Laboratory, Fort Gordon, Georgia.

On 4 April Special Agent Ruiz telephoned appellant's unit to locate him in order to arrange for the military police to pick him up. Speaking with his immediate supervisor, Staff Sergeant Henderson, he identified himself as an investigator and was informed that appellant had gone to his quarters. Along with military police investigator Vitale, Ruiz went to appellant's on-post family quarters to apprehend him. The same Staff Sergeant Henderson that Ruiz spoke to earlier answered the door in response to Ruiz's knock. Ruiz and Vitale identified themselves with their "credentials" and asked for appellant. Henderson, a frequent visitor, told them that appellant was upstairs and then yelled, "Hey, there's

someone here to see you". A voice from upstairs said for them to wait, he would be right down. Henderson opened the door and told Ruiz and Vitale to come in. They went into the living room for approximately two minutes at which time Ruiz became concerned that appellant was taking too long to appear. With Vitale behind him he started up the stairs to find appellant who they then met coming down. Ruiz and Vitale identified themselves and placed appellant under apprehension.

They returned to the living room where appellant was advised of the charges against him and of his rights. Once in the living room, Ruiz saw a copper-colored pipe on the coffee table. Ruiz picked it up, smelled it, and, after detecting the smell of marihuana, informed those present that he was seizing the pipe as evidence. Ruiz then went to his car to call for more officers so that he could leave to obtain a search warrant. While Ruiz was outside, appellant went to a cabinet in the living room, grabbed a bag, and ran out the back door. Vitale attempted to stop him, but appellant threw him to the ground. Hearing a scuffle, Ruiz went back to the house. Both officers gave chase and finally caught appellant about 150 meters from his quarters. The officers recovered the items from the bag appellant had taken, finding a gram scale, some clear plastic bags, a package of baggies, and an aquarium air pump.

Ruiz then obtained a search warrant for appellant's quarters. A subsequent search of the quarters revealed six plastic bags of marihuana in an upstairs bedroom and a small bag of marihuana in a bookshelf. Laboratory analyses confirmed that the bags contained marihuana.

■ With regard to appellant's assertion of error in the admission of the marihuana he sold to Moss, we find that the substance received from Austin by Lieutenant Lunsford was sufficiently identified at trial as marihuana and that it was the same substance received by Moss from Llanos. *United States v. Lewis*, 11 M.J. 188 (C.M.A. 1981). Accordingly, appellant's assertion that it was admitted improperly is without merit.

The admission into evidence of the marihuana found in appellant's quarters, however, presents a more difficult problem. The issue presented is whether this marihuana was improperly admitted into evidence because its discovery occurred during a search of his family quarters following a warrantless apprehension therein.

■ If the search is to be found legal within the meaning of the Fourth Amendment, then it is necessary that the entry into appellant's quarters by police authorities and appellant's apprehension therein first be determined to have been proper. In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that a warrantless, nonconsensual entry into a suspect's home to make an apprehension violates the Fourth Amendment prohibition against unreasonable search and seizure. *See United States v. Jamison*, 2 M.J. 906 (A.C.M.R.1976). Only exigent circumstances justify warrantless, nonconsensual entries. *See United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980). As no commander authorized an arrest [1], and the apprehension was of the most routine nature, a month having passed since the occurrence of the alleged offense for which it was made, we must look to see if there was consent to enter appellant's quarters to determine if the entry was in violation of his rights.

The record of trial establishes clearly that when Agents Ruiz and Vitale went to appellant's quarters on 4 April 1980, their sole purpose was to apprehend him because he sold marihuana to Private Moss on 2 March 1980.[2] The record discloses no reason why

---

1. While military police have authority to apprehend in their own right, Article 7, UCMJ, 10 U.S.C. § 807, and paragraph 19, Manual for Courts-Martial, United States, 1969 (Revised edition), the military equivalent of an arrest warrant is the authorization to apprehend from the appropriate commander. *See United States v. Jamison, supra.*

2. Record of Trial, (page 137):
   Questions by the defense:

they did not first obtain authorization from the responsible commander to apprehend the appellant in his quarters as required by Army regulations.[3] There is no doubt that at the time they went to appellant's quarters, Ruiz and Vitale possessed adequate information to establish probable cause upon which an authorization to apprehend him could have been obtained from the appropriate commander.[4]

On arrival at appellant's quarters their knock was answered by Sergeant Henderson, to whom they identified themselves. Henderson invited them inside after they asked to see appellant who told Henderson to have them wait. Although once inside they did not disclose their intention to apprehend appellant, there was no requirement for them to do so, as long as there was no misrepresentation or ruse. *Nix v. State*, 621 P.2d 1347 (Alaska, 1981). The record discloses no such activity by the agents. Nevertheless, the consent exception to *Payton* must be given freely and voluntarily, *State v. Bailey*, 417 A.2d 915 (R.I.1980),[5] by someone with actual or apparent authority to do so. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *People v. Newton*, 107 Cal.App.3d 568, 166 Cal.Rptr. 60 (1980). In this case, Henderson knew Ruiz and Vitale were police officials and that Ruiz had been looking for appellant earlier in the day. He in fact had informed Ruiz that

appellant could be found in his quarters. Thus it must have been obvious to him that the agents' purpose in coming to the quarters was to conduct police business. Moreover, it is reasonable to conclude Henderson had advised appellant that Ruiz was attempting to locate him and this may in fact have been why Henderson was present at the quarters. Further, accepting the testimony of the prosecution witnesses as factual, there is no indication that appellant made any effort in his verbal exchange with Henderson at the door to preclude or delay the entry of the agents. In view of these circumstances, we agree with the trial judge who in finding there was consent given for the agents to enter[6] said:

> "Somehow it seems to me that if a relationship like this exists, a friend is frequently at the house. He's downstairs drinking a beer, the circumstances [are] that he feels free to answer the door, and if you take the testimony of the prosecution witnesses at face value, to invite them in, would indicate that he had the authority by custom to behave in that fashion with respect to the accused's home.

Once the agents were legitimately on the premises, and in the absence of any limitations on the given consent, appellant's apprehension was proper. *Payton v. New*

---

> Q: Sergeant Ruiz, when you went to Specialist Ward's quarters, your whole purpose in going there was to apprehend him, wasn't it?
> A: The only purpose.

3. Army Regulation 195–2, paragraph 3–20, 6 May 1977, requires CID agents, absent exigent circumstances, to obtain authorization from the responsible commander based upon probable cause before apprehending a suspect in his private quarters. We do not read this regulation to preclude apprehension in family quarters in the absence of command authorization where proper consent to enter is given to CID agents.

4. Ruiz had been told by Lieutenant Lunsford of the sale of marihuana to two soldiers in his unit. Lunsford also had turned over to Ruiz the vegetable matter he had received from Austin. Ruiz's testimony, based on his experience and from the appearance of the substance, was

that he was sure the matter received from Lunsford was marihuana. The results of the laboratory test showing it was marihuana was available also to Ruiz prior to 2 April 1980.

5. *See United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975), in which it was held there was no error in the determination that when one opened the door and stepped back there was an implied invitation to enter.

6. The standard to establish consent as applied in consensual entries to make an arrest is the same as that employed in consensual entries to conduct a search. *People v. Montgomery*, 84 Ill.App.3d 695, 40 Ill.Dec. 183, 405 N.E.2d 1275 (1980). That standard is whether under the totality of circumstances consent was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

*York, supra.*[7] This is true even though the CID agents had commenced a search of the quarters for appellant because of their concern with the length of time it was taking him to appear. *Nix v. State, supra.* The apprehension having been determined legal, the remaining issue of whether the subsequent search of appellant's quarters was reasonable as required by the Fourth Amendment can be resolved quickly. Probable cause was established for issuance of the search authorization by the magistrate with the discovery in plain view of the copper-colored pipe of a type frequently used for smoking marihuana, by appellant's sale of marihuana to Moss, and his reaction to his apprehension by escaping from the agent's custody after grabbing a bag which contained items associated with the use and trafficking of marihuana. The marihuana found in appellant's quarters during the subsequent search was therefore correctly admitted into evidence at appellant's trial.

The findings of guilty and the sentence are affirmed.

Judge COHEN concurs.

FULTON, Senior Judge, concurring:

I concur. My concurrence as to the findings that appellant sold marihuana is based on Moss' testimony as to the reaction he received from smoking the same substance. However, I also regard the chain of custody over the marihuana introduced into evidence as having been established. *See, e.g., United States v. Courts,* 9 M.J. 285 (C.M.A. 1980), *aff'g,* 4 M.J. 518 (C.G.C.M.R.1977).

As for the warrantless entry of Special Agent Ruiz and Military Police Investigator Vitale into appellant's on-post family quarters under nonexigent circumstances for the purpose of apprehending him, I first agree that their testimony is more credible than that of Staff Sergeant Henderson (appellant's close friend, who testified that they entered without invitation when the door was opened and that he did not recall announcing the presence of anyone to the appellant upstairs). I further believe that they reasonably relied on the apparent authority of Henderson—whom they knew was appellant's duty supervisor, and who had directed them to the quarters knowing their identity—to admit them into the quarters, particularly in the light of his announcement to appellant and the appellant's reply. Accordingly, in my view, their lack of authorization in the nature of a warrant * did not taint the search authorization subsequently obtained. *Cf. Nix v. State,* 621 P.2d 1347, 1349 (Alaska 1981); *People v. Adams,* 53 N.Y.2d 1, 439 N.Y.S.2d 877, 880–81, 422 N.E.2d 537, 540–41, (N.Y. 1981); *see also United States v. Sledge,* 650 F.2d 1075, 1077 n.4 (9th Cir. 1981). Accordingly, I join in the affirmance.

---

**7.** We decline to speculate on what agents Ruiz and Vitale would have done had they not obtained consent to enter the quarters. Obviously had consent not been obtained the appellant's apprehension in his quarters would have been illegal under the existing circumstances.

* The requirement for "prior appropriate authorization by a responsible commander based on probable cause," which is found in paragraph 3–20a of Army Regulation 195–2, Criminal Investigation: Criminal Investigation Activities, dated 6 May 1977, is not found in earlier regulations and appears, therefore, to be but a reflection of this Court's decision of 21 June 1976 in *United States v. Jamison,* 2 M.J. 906 (ACMR 1976), rather than an independent requirement.