Harry **SCHIKORA**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 5807.

Court of Appeals of Alaska.

Oct. 8, 1982.

---

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

On April 18, 1980, a disassembled 1970 Ford Boss engine, originally manufactured for use in stock car racing, which was owned by Richard Marrotta was stolen from the porch of Marrotta's residence. Marrotta reported the theft to the Alaska State Troopers. Shortly thereafter, Marrotta was contacted by Richard Pears, a Fairbanks high school student. Pears told Marrotta that B.K., a fellow student, had contacted him and offered to sell the engine to him. Pears was contacted by the state troopers and agreed to go to the King Trucking Company yard to meet B.K. and view the engine. Pears went to the King Trucking Company yard that night to see B.K. The yard is approximately four miles

from the Marrotta residence. It consists of a large fenced yard and a truck repair shop. Pears met B.K. at the yard and the two were shortly joined by Harry Schikora, a fellow high school student. B.K. and Schikora told Pears that they had stolen the engine, and showed him where they had stored the parts of the disassembled engine in the trunks of two disabled vehicles. The two vehicles were a brown or gold Plymouth and a blue GTO. The vehicles were stored in a remote part of the yard reserved for "dead" vehicles being cannibalized for parts. The Plymouth which was jointly owned by B.K. and his father, Ed (Wayne) King, and registered to Ed King was laying in the lot uncovered. The GTO, which was owned solely by B.K., was stored in a makeshift tent under a tarpaulin suspended on pipe racks. B.K. planned to restore the GTO at a future date. B.K. and Schikora agreed to sell the stolen engine to Pears for $500. Pears reported this conversation to the state troopers.

Trooper Ellis decided not to get a search warrant, instead he attempted to call Ed King, owner of the trucking yard, seeking King's consent to search the two disabled vehicles in which the disassembled stolen engine parts were being stored. Ed King was out of town but Dean King, Ed's brother and the uncle of B.K., had been left in charge of the yard. Dean King went to the troopers' office, discussed the matter with Trooper Ellis, and executed a written consent to search. While the standard consent to search form, signed by Dean King, purported to authorize a search of Dean King's residence, both King and the trooper understood that only the two vehicles would be searched.

Dean King and Trooper Ellis drove to the trucking yard in the trooper's vehicle. At Trooper Ellis' request King and his employees opened the trunk of the Plymouth with two screwdrivers; it had no lock. They found the stolen engine block and some additional parts in the Plymouth trunk. They then proceeded to search the blue GTO, which was located approximately seventy-five feet from the Plymouth. An employee of the truck shop crawled into the GTO which had no seats, entered its trunk through the interior, and opened the trunk from the inside. The remaining parts of the stolen engine were found there. The trooper photographed the scene including the opened vehicle trunks and the stolen engine parts inside, returned the engine to Marrotta, and contacted B.K. and Harry Schikora. B.K. was ultimately treated in the juvenile court, and Schikora, who was a few months older, was indicted for burglary and theft of the engine. He was acquitted of the burglary but convicted of the theft.

Schikora appeals contending that the trial court erred in not suppressing the evidence found in the search of the trunk of the two disabled vehicles in which the stolen engine parts were stored. Specifically, he contends that Dean King lacked authority to consent to a search of the vehicles and, if assuming *arguendo* Dean King had authority, his consent was nonetheless invalid because it was coerced by the trooper's implication that a search warrant would issue immediately regardless.[1]

█ The state and federal constitutions protect our citizens against unreasonable searches and seizures. A warrantless search is presumed unreasonable unless justified by the state, *Schraff v. State,* 544 P.2d 834, 838 (Alaska 1975), and any fruits of such a search must be suppressed. *Erickson v. State,* 507 P.2d 508, 516 (Alaska 1973).

█ In order to justify a search the state must prove by a preponderance of the

---

1. Schikora was not a permanent employee of King Trucking or related to the Kings. He had no ownership interest in the vehicles searched. The state challenged his standing to object to the search and seizure in the court below. But the trial court did not rule on the issue of standing and the state has not argued that issue in its brief on appeal, consequently, we do not reach it. *Compare Christian v. State,* 513 P.2d 664, 668 (Alaska 1973) (court assumed, without deciding, that appellant had standing) *with G.R. v. State,* 638 P.2d 191, 201–05 (Alaska App.1981) (appellant held to have no standing to assert a violation of codefendant's rights).

evidence that the search falls within an exception to the warrant requirement. *Schraff*, 544 P.2d at 838. Traditionally, consent by someone having authority to give it justifies a search without a warrant. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 985, 39 L.Ed.2d 242 (1974); *Nix v. State*, 621 P.2d 1347, 1348 (Alaska 1981).

The trial court found that Dean King conducted a private search not restricted by the constitution. *See Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Snyder v. State*, 585 P.2d 229, 232 (Alaska 1978). Alternatively, the trial court concluded that Dean King had authority to consent to the search.

■ While King consented to the search and believed it was in the best interest of his employer to do so, we do not agree that this was a private search. Dean King conducted the search at the request of Trooper Ellis. *Cf. Snyder*, 585 P.2d at 231. Where a private citizen undertakes a search at the direction of or in conjunction with a law enforcement officer, the search is governed by the fourth amendment. *See Corngold v. United States*, 367 F.2d 1 (9th Cir. 1966); *McGalliard v. State*, 470 P.2d 275, 279 (Alaska 1970); *People v. Adams*, 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537, 539–40 (1981).

■ Nevertheless, we believe that the lower court's conclusion that Dean King had actual authority to authorize the search of the Plymouth and apparent authority to search the GTO was not clearly mistaken[2] and must therefore be affirmed. *Phillips v. State*, 625 P.2d 816, 817 n.5 (Alaska 1980); *Doyle v. State*, 633 P.2d 306, 307–09 (Alaska App.1981).

■ Dean King was left in charge of the trucking company yard; he was foreman of the repair shop and was authorized to purchase parts for vehicles being repaired. While Ed King had never specifically authorized Dean to admit troopers to the premises, he had never forbidden it and testified that he had previously called the troopers for assistance in recovering property stolen from the yard and wished to keep on good terms with the police. He indicated that had he been present, he probably would have authorized the search himself. Under these circumstances, we conclude that Dean King had actual authority to give the troopers access to the company yard and the junk vehicles stored there. There is no suggestion that Ed King was involved in the theft. The owner of a private business has a substantial interest, if not a duty, to prevent his premises from being used for illegal purposes. *See Snyder v. State*, 585 P.2d at 232. In addition, the owner has a substantial interest in disassociating himself from any illegality taking place on his premises. *See Gieffels v. State*, 590 P.2d 55, 61–62 (Alaska 1979). A separate question exists as to whether Dean King had authority to consent to search the interior of vehicles stored in the yard.

■ We conclude, though the question is closer, that Dean King had actual authority to permit the troopers access to the trunk of the Plymouth. While it was acquired for B.K. and was intended by him to be used for parts, it was owned by and registered to Ed King who, under the evidence, we believe had a joint right of access with B.K. Since Dean King was left in charge by his brother, Ed King, the trial court could infer that Dean had implied authority from Ed to permit inspection of the Plymouth trunk. Like the court in *Gieffels*, we believe that the owners and operators of the trucking yard had a right to disassociate themselves from any illegal use of their premises to store stolen property. Authority to prevent such a use of their property is a necessary corollary of the right not to be involuntarily involved in storing stolen property.

---

**2.** Actual authority to permit a search may be found either in (1) agency principles or (2) an equal and independent right of access to the area searched. *Cf. McGalliard v. State*, 470 P.2d 275, 278 (Alaska 1970). An agents actual authority may be express or implied. Restatement of the Law, Agency 2d § 7, comment C at 29–30 (1958). Any conduct of a principal which reasonably interpreted causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him is sufficient to establish apparent authority. *Id.* at § 27. 2 W. LaFave, Search and Seizure § 8.3(G) (1978).

■ The GTO presents even greater difficulty. It was solely owned by B.K. While it was stored on the trucking company premises with Ed King's permission, this arrangement standing alone did not give Ed King access to its trunk. 2 W. Lafave, Search and Seizure § 8.6 at 763–64 (1978). This is at least true where the trunk of the GTO was locked and neither Ed King nor Dean King had the key. *Compare United States v. Presler,* 610 F.2d 1206 (4th Cir. 1979) *with State v. Bailey,* 276 S.C. 32, 274 S.E.2d 913 (1981). Dean King primarily felt justified in permitting the search because B.K. was a minor and he was temporarily responsible for him in Ed King's absence. There is a split of authority regarding a parent or guardian's authority to consent to a police search of his minor child's property. *See* 2 W. LaFave, Search and Seizure § 8.4(b) at 731–36 (1978) (a parent's consent to a police search of his minor child's property is to be distinguished from a parent conducting a search himself, or herself, and then turning the proceeds over to the police). *Compare In Re Scott K.,* 24 Cal.3d 395, 155 Cal.Rptr. 671, 595 P.2d 105 (1979), *cert. denied,* 444 U.S. 973, 100 S.Ct. 468, 62 L.Ed.2d 388 (1980) (rejecting a parent's right to consent to the search of a locked toolbox in minor child's bedroom) *with J.M.A. v. State,* 542 P.2d 170 (Alaska 1975) (upholding foster parent's search of foster child's room which resulted in the discovery of marijuana); *compare also In Re Scott K.* with *State v. Wagster,* 361 So.2d 849 (La.1978) (upholding parents' right to consent to the search of a nineteen-year-old's disabled van stored in the parents' backyard).

It is not necessary for us to decide the extent of a parent's authority to permit the search of his minor child's separate property because we believe that on the facts presented Dean King had apparent authority to permit a search of the blue GTO's trunk.[3] *Nix v. State,* 621 P.2d 1347, 1349–50 (Alaska 1981); *People v. Adams,* 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537, 540–41 (1981).

The GTO was obviously disabled. It had no engine and was neither registered nor licensed. It was stored with other junk vehicles in a part of the yard reserved for vehicles being cannibalized for parts. There is nothing in the record that would put the police on notice that the vehicle was the exclusive property of B.K. as distinguished from the other wrecks surrounding it. True, Dean King told Trooper Ellis while the search of the GTO was being conducted that it had been acquired by Ed King for B.K. to be restored for B.K. and was located in a make-shift tent, but we do not believe these facts standing alone put the trooper on notice of B.K.'s exclusive ownership. Under these circumstances, we hold that Trooper Ellis could reasonably rely on Dean King's apparent authority and search the GTO's trunk.

■ Finally, we do not believe Dean King's expectation that if he didn't consent to a search a warrant permitting search would be obtained invalidates his consent. King knew Ellis couldn't search without his permission or a warrant. Ellis did not threaten King with a warrant, and given B.K.'s admissions to Pears which had been related to Ellis, there was clearly probable cause to obtain a warrant. Under these circumstances, Dean King's expectation that a warrant could be obtained did not invalidate his consent. 2 W. Lafave, Search and Seizure § 8.2(c) at 648–49 (1978).

The judgment of the superior court is AFFIRMED.

---

**3.** Schikora argues that apparent authority was not relied upon by the state below, but the state did discuss it in the brief submitted to the trial court in connection with its general argument on Dean King's authority. We believe the argument is properly before us.