■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL T. STEVENS, Also Known as DAVID CREDIFORD, Appellant.—Harvey, J.

During the months of February and March 1986, defendant solicited merchants from the Schoharie County area to gain their participation in a coupon promotion known as the Community Business Sampler (hereinafter the Sampler). The Sampler consisted of coupons from participating merchants providing for free goods or services to consumers who purchased the Sampler. Telephone solicitation was used to sell the Sampler to consumers for $24.95. Over 20 merchants from Schoharie County participated in the promotion. Merchants who participated were to receive free advertising in the "Penny Saver" or "Budget Booster" magazines. Defendant ran the promotion with the help of his codefendant, Khadijah N. Nagi.

There was testimony that, while soliciting merchants, defendant generally told those choosing to participate in the promotion that 500 coupon booklets would be sold. Defendant would present the merchant with a contract representing the amount to be sold as 500, he would obtain the merchant's signature and then, purportedly because he did not have authority to sign the contract, take the contract to "his boss"

for signature. The contracts were then altered to state "1500 pair" and, subsequently, well over 500 of the coupon booklets were sold to consumers.

Defendant and Nagi operated out of rooms they had rented in Nagi's name, on behalf of the Sampler, at the Best Western Motel of Cobleskill in the Town of Cobleskill, Schoharie County. On an evening in May 1986, defendant and Nagi engaged in a loud argument in the lobby of the motel concerning ownership of the merchant contracts, which were stored in a safe in the motel. The police and the District Attorney were summoned to the scene. Nagi told the District Attorney that she owned the business, that defendant had forged her name and altered the contracts and that defendant would destroy the contracts if he got a hold of them. Nagi stated that she wanted to turn the contracts over to the District Attorney. The District Attorney instructed the motel's general manager not to release the contracts to anyone until he had them subpoenaed. The merchants who had participated in the Sampler were thereafter informed by the District Attorney's office that they were not required to honor any more Sampler coupons. Although by this time the merchants had been presented with and honored coupons from the Sampler, none of the merchants had yet honored in excess of 500 of the coupons.

Defendant and Nagi were subsequently charged in a 159-count indictment with two counts of scheme to defraud in the first degree, 37 counts of attempted grand larceny in the second degree, 37 counts of forgery in the second degree, 37 counts of criminal possession of a forged instrument in the second degree, one count of criminal impersonation in the second degree, 37 counts of falsifying business records in the first degree and eight counts of false advertising. Defendant's motion to suppress the contracts and other promotional material seized by the District Attorney was denied and the matter moved to trial. Following a lengthy trial, and County Court's decision to submit only representative counts to the jury so as not to overburden them, defendant was convicted of one count of scheme to defraud in the first degree, four counts of criminal possession of a forged instrument in the second degree, three counts of forgery in the second degree and one count of false advertising. Defendant was acquitted of the crime of criminal impersonation in the second degree. Defendant was sentenced to prison terms of 1⅓ to 4 years on the scheme to defraud conviction, 2 to 6 years for each count of criminal possession of a forged instrument, 2 to 6 years for

922

each count of forgery and one year for false advertising. County Court determined that all sentences should run concurrently. Defendant appeals.

Initially, defendant contends that the People failed to produce legally sufficient evidence of the crime of scheme to defraud in the first degree. Penal Law § 190.65 (1) sets forth the relevant elements of that crime as follows: "A person is guilty of a scheme to defraud in the first degree when he: (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons". This statute is modeled after the Federal mail fraud statute (18 USC § 1341). The essence of the crime is "the nefarious character of the scheme rather than the dollar loss of the victims" *(People v Palmer,* 108 AD2d 545, 546). The statute does, however, require that at least one victim part with property.

Defendant claims that the People failed to show that at least one victim parted with property as a result of his scheme since, after the discovery of the scheme by authorities, merchants were told that they did not have to honor any of the coupons. Before the scheme was discovered, however, well over 500 coupon booklets had been sold and numerous coupons had been honored by merchants. Since defendant's material and illegal alteration of the contracts rendered them void, property was extracted from victims within the meaning of the statute when the first coupon booklets were sold to consumers and presented to and honored by merchants. Further, by selling an excessive number of coupon booklets, defendant fraudulently obtained money directly from consumers, the cost of which ultimately would be passed on to merchants either by reason of the fact that they would have to provide free goods or services which they had not agreed to provide or they would lose goodwill by refusing coupons. Several merchants testified that their refusal to honor coupons caused consumer ill will.

Defendant also contends that the order by the District Attorney to the motel manager to refuse defendant access to the contracts was an unreasonable search and seizure in violation of the 4th Amendment. Where an officer performing a search relies "in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that the individual does, in fact, have the authority to consent, evidence obtained as the result of such a

search should not be suppressed" *(People v Adams,* 53 NY2d 1, 9, *cert denied* 454 US 854). Where two or more people share common authority over property, any one of them may consent to a lawful search *(People v Cosme,* 48 NY2d 286, 292). Here, Nagi had been referred to by defendant as his boss. The motel room had been rented in Nagi's name. The certificate of doing business under the name Community Business Sampler had been filed by her and was in her name. Nagi's name appeared on the contracts. Nagi told authorities she owned the business and that she was turning over the contracts to the District Attorney. Nagi thus consented to the immediate possession of the documents by the District Attorney, although they were not subpoenaed until a later date. Under these circumstances, it was reasonable for the District Attorney to believe that Nagi was at least a co-owner of the contracts and that he had her authority to seize them. Accordingly, we conclude that County Court correctly decided not to suppress the contracts.

The only other of defendant's numerous arguments which merits discussion is his assertion that County Court committed reversible error in allowing admission of certain uncharged acts. However, during defendant's rambling and protracted testimony he talked about several uncharged acts which County Court had initially ruled the People could not inquire about. By testifying about these events, defendant opened himself to cross-examination regarding the incidents. To the extent County Court may have erred in allowing the People to inquire about civil judgments against defendant in Oswego and Madison Counties enjoining him from conducting unlawful promotions, it was harmless error in light of the overwhelming proof of guilt and defendant's willingness to open the door to potentially more prejudicial prior uncharged acts.

Judgment affirmed. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.