OPINION OF THE COURT
Jasen, J.
On this appeal, we are once again called upon to delineate the bounds of the exclusionary rule. The specific question presented is whether evidence obtained as a result of the warrantless search of a closet in the defendant’s apartment should have been suppressed. To answer this question, we must determine whether, under the circumstances of this case, the reasonable, although mistaken, reliance by police officers on the authority of an individual to consent to a search should result in the suppression of evidence obtained as a result of that search.
At 9:00 p.m. on September 13,1976, Housing Patrolman Rudolfo Quinones was on'duty at Tinton Avenue and 163rd Street in Bronx County. Alerted by a commotion across the *5 street from where he was standing, Quinones observed a man, later identified as defendant, holding a gun to a woman’s head. As Quinones approached the couple, the defendant released the woman and began to move in Quinones’ direction. Drawing his gun, Quinones ordered the defendant to halt and drop his weapon. The defendant, who was then approximately 25 feet away, fired two shots at Quinones. Patrolman Quinones fired two shots in return and defendant fell to the ground. Believing defendant to be wounded, Quinones began to walk toward him. The defendant suddenly wheeled and fired two more shots at Quinones which fortunately also missed their mark. Quinones was then not able to return any shots because some bystanders had come into the line of fire. Thereupon, defendant got to his feet and fled through the crowd that had gathered at the scene, disappearing into a nearby wooded area. Quinones radioed for assistance and several police cars soon arrived. Quinones gave the arriving officers a brief description of the perpetrator and the gun he was carrying which, according to Quinones, was “like a .32.” A search of the immediate vicinity by the officers proved to be unsuccessful.
At this point, a woman, Arab Blue, approached the police and identified herself as the girlfriend of the gunman. She provided the police with the defendant’s name and address and urged the police to go to his apartment because he had threatened to kill her. The police were also told by Blue that defendant kept weapons and ammunition at the apartment and that she was in fear that he might have returned there to carry out his threat against her. Blue then escorted Quinones and the other officers to the defendant’s nearby apartment and gave them access by opening the door with a key she was carrying. Upon entering, a cursory inspection of the premises revealed that neither the defendant nor anyone else was present. Blue then pointed out the closet in which she claimed defendant stored his weapons. One of the officers opened the closet door and inside the police found a .308 calibre rifle, 25 rounds of ammunition for the rifle and 44 rounds of .32 calibre ammu *6 nition.[1] The police seized these items and exited the apartment without otherwise searching the premises. Upon leaving the building, Blue informed the officers that she did not live in the apartment, but resided elsewhere. Five days later, defendant was arrested and charged, inter alia, with the attempted murder of Patrolman Quinones.
Defendant made a pretrial motion to suppress the evidence obtained from his closet. After a hearing, at which only Quinones was called to testify as to the events of September 13, defendant’s motion was denied. Noting that it was incumbent upon the police to pursue their investigation by going to the apartment to see if the defendant was there and that entry to the premises “was granted by somebody who ostensibly had permission” to admit them, the suppression court ruled that no warrant was necessary under the circumstances in order to conduct the limited search of the closet.
On appeal, the Appellate Division affirmed defendant’s conviction, two Justices concurring in result and one Justice dissenting. According to the court (p 159), the “limited search was, in effect, conducted by [Arab] Blue, a private individual, not the police” and, therefore, provided no basis for suppression. Alternatively, the Appellate Division adopted the reasoning of the suppression court in denying defendant’s motion to suppress, to wit: that the police needed no warrant under the circumstances because they were given permission to open the closet by one appearing to have authortiy to consent to the search.
The defendant contends that his motion to suppress was erroneously denied. He argues that the entry by the police into his closet was a “search” within the meaning of the Fourth Amendment and, therefore, is subject to the exclusionary rule.[2] The defendant, while conceding that the in *7 formation provided by Arab. Blue gave the police probable cause to search for weapons in the closet, nevertheless asserts that the failure to obtain a warrant requires that the evidence seized be suppressed. We disagree.
At the outset, we reject the proposition, apparently adopted by the court below, that the search of defendant’s closet is not subject to Fourth Amendment scrutiny because it was, in effect, conducted by Arab Blue, a private individual. Of course, it is well settled that evidence obtained as a result of an unauthorized search by a private party is not subject to the exclusionary rule. (Burdeau v McDowell, 256 US 465; People v Gleeson, 36 NY2d 462, 465; People v Horman, 22 NY2d 378, 382.) There is, however, no authority for the proposition that a search actually conducted by police officers, although at the direction of a private individual, is not subject to the requirements of the Fourth Amendment. Indeed, the law is quite to the contrary. Where, as here, there has been affirmative participation by government officials in obtaining evidence, the police cannot avoid the constitutional limitations imposed upon them by claiming that the acts of a private party are also involved. (Lustig v United States, 338 US 74; People v Jones, 47 NY2d 528; People v Esposito, 37 NY2d 156; cf. People v Adler, 50 NY2d 730.) Evidence obtained by the police from the defendant’s closet clearly was the fruit of a “search” within the meaning of the Constitution and, therefore, calls into play the full panoply of Fourth Amendment considerations.
Although by its express terms the Fourth Amendment prohibits only “unreasonable” searches and seizures, the Supreme Court has made it clear that “a search conducted without a warrant issued upon probable cause is ‘per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.’” (Schneckloth v Bustamonte, 412 US 218,219, quoting Katz v United States, 389 US 347, 357; see, also, Stoner v California, 376 US 483, 486.) Two such exceptions to the warrant requirement *8 which have developed over the years are searches conducted pursuant to consent (Davis v United, States, 328 US 582, 593-594; Zap v United States, 328 US 624, 630) and searches undertaken in what have come to be called “exigent circumstances” (see Mincey v Arizona, 437 US 385, 392-394; Michigan v Tyler, 436 US 499; People v Mitchell, 39 NY2d 173). Elements of both exceptions to the warrant requirement are present in this case.
It is well established that the police need not procure a warrant in order to conduct a lawful search when they have obtained the voluntary consent of a party possessing the requisite authority or control over the premises or property to be inspected. (Schneckloth v Bustamonte, 412 US 218, supra; Davis v United States, 328 US 582, supra; People v Lane, 10 NY2d 347.) Furthermore, it is equally clear that these permissive searches are not limited to those instances where consent was given by the defendant. Rather, a lawful search may be conducted without a warrant where “permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.” (United States v Matlock, 415 US 164,171; Coolidge v New Hampshire, 403 US 443; Frazier v Cupp, 394 US 731; People v Cosme, 48 NY2d 286.) However, the question whether a warrantless search may be sustained merely upon a showing that the searching officers reasonably, albeit erroneously, believed that the consenting party had sufficient authority over the premises or property to permit the search has been expressly left open by the Supreme Court (United States v Matlock, supra, at p 177, n 14) and heretofore has not been addressed by this court.
Other courts addressing this issue in analogous situations have, for the most part, refused to suppress evidence obtained as the result of a reasonable, good faith belief by law enforcement officials that permission was given by one with actual authority to consent to a search. (E.g., United States v Peterson, 524 F2d 167, cert den 423 US 1088; United States v Sells, 496 F2d 912; United States v Miles, 480 F2d 1217; Nix v State, 621 P2d 1347 [Alaska]; People v Gorg, 45 Cal 2d 776; State v Christian, 26 Wash App 542; State v Drake, 343 So 2d 1336 [Fla] ; but see, e.g., United *9 States v Selberg, 630 F2d 1292; United States ex rel. Cabey v Mazurkiewicz, 431 F2d 839.) The rationale underlying this approach derives from the fact that the Fourth Amendment protects only “against unreasonable searches and seizures”. Hence, if the police are acting in a reasonable fashion in response to the circumstances with which they are confronted, then an error in judgment in failing to ascertain the actual authority of the person to consent should not give rise to an unreasonable search. (Cf. Hill v California, 401 US 797.)
A further, although somewhat related, consideration behind this line of reasoning involves the very purpose of the exclusionary rule. The exclusionary rule is designed “to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures”, not redress “a personal constitutional right of the party aggrieved.” (United States v Calandra, 414 US 338, 347-348.) Because the exclusionary rule is primarily aimed at deterring police misconduct, these courts have recognized that its purpose would not be furthered by applying it in instances where the police, believing that they are acting lawfully, engage in a search which later turns out to be “unlawful” because, in hindsight, their reasonable reliance on the consenting person’s authority proves to be erroneous. (See, e.g., Nix v State, supra; People v Gorg, supra; see, generally, La Fave, Search and Seizure, § 8.3, subd [g].)
We would agree that where the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as the result of such a search should not be suppressed. Application of the exclusionary rule in such instances of reasonable, good faith reliance by the police would do little in terms of deterring misconduct by the authorities in furtherance of the protections afforded by the Fourth Amendment. We emphasize that the police belief must be reasonable, based upon an objective view of the circumstances present and not upon the subjective good faith of the searching officers. Moreover, a warrantless search will not be justified merely upon a bald assertion *10 by the consenting party that they possess the requisite authority. Nor may the police proceed without making some inquiry into the actual state of authority when they are faced with a situation which would cause a reasonable person to question the consenting party’s power or control over the premises or property to be inspected. In such instances, bare reliance on the third party’s authority to consent would not be reasonable and would, therefore, subject any such search to the strictures of the exclusionary rule.
Applying these principles to the present case, the police were approached minutes after the shooting took place by a woman who claimed to be defendant’s girlfriend. She gave the police the defendant’s name and address, which was in the immediate vicinity, and said that he threatened to kill her. She provided precise information as to the nature and location in defendant’s apartment of certain contraband, weapons and ammunition, and she possessed a key to the premises. While these facts may have created the inference that Arah Blue resided with defendant in the apartment, it was equally possible that she did not possess the requisite authority and control over the premises to consent to a search. Under ordinary circumstances, faced with such an ambiguous situation, the police should have made inquiry so as to ascertain whether Arah Blue possessed the authority to consent to a search. Indeed, the simple expedient of asking her where she lived prior to conducting the search could have quickly clarified the situation as evidenced by the fact that she informed the police of her actual residence immediately after leaving the apartment. Nevertheless, we conclude that, under the exigent circumstances which confronted the police, it was clearly reasonable for the officers, based on Arah Blue’s conduct, to rely on her apparent capability to consent to a search of the closet without making an inquiry to ascertain her actual authority over the premises.
Here, within minutes of a shooting directed at a fellow officer, the police were confronted by a woman who stated that the gunman was her boyfriend, that she feared he would try to kill her and that he may have returned to his nearby apartment where he stored weapons and ammunition. This man posed an immediate threat to both Arah *11 Blue and the police; he had just senselessly fired four shots at Officer Quinones; he had escaped into a nearby area and was still at large; and he had an arsenal of weapons stored in his apartment. Faced with these exigent circumstances, the police were under a duty to go to the apartment in order to apprehend the gunman before he could harm anyone else. Having been admitted to the apartment by one who appeared to have control over the premises, the police were justified in not only determining whether the gunman was present, but also in immediately securing any weapons which could be used against them or Arah Blue. (Cf. Warden v Hayden, 387 US 294, 298-299.) Time was of the essence and the police conduct was limited in scope to searching for the defendant and seizing the cache of weapons and ammunition stored in the closet. The police should not now be faulted for failing to undertake a more thorough inquiry into Arah Blue’s authority to consent to the search of the closet. The officers’ reliance on her authority over the premises was reasonable and warranted by the exigencies of the situation, which called for immediate action.
Detached from the tension and drama of the moment, it is sometimes easy for an appellate court to lose sight of the fact that it is the reasonableness of police action which is the linchpin to analysis of any case arising under the Fourth Amendment. When judged in accordance with “the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act” (Brinegar v United States, 338 US 160, 175), the police conduct of securing the rifle and ammunition in the defendant’s closet was a reasonable response to the situation in which they found themselves and, therefore, was not proscribed by the exclusionary rule. We have examined the defendant’s remaining contentions and have found them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order affirmed.

. The fact that the box of .32 calibre ammunition contained only 44 rounds became particularly relevant at trial in that such ammunition is normally sold in boxes of 50, indicating that 6 rounds had been removed. Defendant testified at trial that he had found the box of ammunition on a subway and that he never owned a .32 calibre handgun.

. Defendant never raised the contention in support of his motion to suppress that the initial entry into his apartment was unauthorized. Moreover, he con *7 ceded at the Appellate Division that the police could properly enter the apartment for purposes of making an arrest based on the information provided by Arab Blue. On this appeal, therefore, we are concerned solely with the warrantless search of defendant’s closet and do not consider the legality of the initial entry by the police into his apartment.