RONNIE LEE SNYDER, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 17420

June 25, 1987                                738 P.2d 1303

*Earl and Earl,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *John Ham,* Deputy District Attorney, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In the early morning hours of March 20, 1984, Joel Walker was walking to his apartment when he was accosted by a man with a gun. Walker identified the appellant, Ronnie Lee Snyder, as this man. Snyder took various items of personal property, including credit cards, cash, and car keys. He also took Walker's car.

On April 5, 1984, at 4:00 a.m., Las Vegas Metropolitan police officers were called to an apartment located at 416 North 15th Street in Las Vegas, and found Larry Snyder, Ronnie's brother, sitting on the curb with a self-inflicted gunshot wound in the head. At the hospital, Larry told the police that they could find marijuana underneath the bed at the apartment. Later that morning, the police went to the apartment. Ronnie's brother Gary, a paraplegic confined to a wheelchair, answered the door. The police asked if they could search the house, and Gary said, "Go ahead." The police found marijuana under the bed. The police also found marijuana in a dresser drawer. Another drawer contained a plastic wallet container with various bank and credit cards issued to Joel Walker and a driver's license issued to Ronnie Snyder, which matched the description of the robbery suspect. Police files listed Ronnie as an escapee from Iowa. After further investigation, Ronnie was arrested and charged with burglary, robbery, and grand larceny auto. He was returned to the

Iowa Correctional Treatment Unit. The State lodged a detainer against him and requested temporary custody pursuant to the Interstate Agreement on Detainers (IAD), NRS 178.620. Ronnie was returned to Nevada on December 3, 1984.

Ronnie was arraigned on December 27, 1984. He waived a reading of the information and witnesses, but invoked his 60 day speedy trial rights. He was not asked to enter a plea. His trial did not begin until February 3, 1986, 427 days after his arrival in Nevada.

Ronnie filed a motion to suppress evidence obtained from the 416 North 15th Street apartment, alleging it was the product of an illegal search. Ronnie's brothers, Terry, Larry, and Gary, each filed affidavits stating that the apartment belonged to Ronnie, that they did not live there, and that they did not have authority or permission to consent to a search. However, after a brief hearing on February 3, 1986, the motion to suppress was denied. A jury found Ronnie guilty of burglary, robbery, and grand larceny auto.

Ronnie argues that the charges against him must be dismissed for failure to bring him to trial within the 120 day period specified in Article IV of the IAD. NRS 178.620, Article IV(c), provides, in relevant part, "[T]rial shall be commenced within one hundred twenty [120] days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Failure to comply with the 120 day trial limitation carries a stringent sanction. Article V(c) provides that if the prisoner is not brought to trial within the time period, the court shall enter an order dismissing the indictment with prejudice. NRS 178.620, Article V(c); Cuyler v. Adams, 449 U.S. 433, 445 (1981). The 120 day requirement is not absolute. The court may grant a necessary or reasonable continuance for good cause shown. NRS 178.620, Article IV(c). The time period is tolled whenever the prisoner is unable to stand trial. NRS 178.620, Article VI(a). It is also appropriate to exclude those periods of delay occasioned by the defendant. See United States v. Scheer, 729 F.2d 164, 168 (2d Cir. 1984). Furthermore, a prisoner may waive his IAD rights if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD. Brown v. Wolff, 706 F.2d 902, 907 (9th Cir. 1983).

Ronnie's trial was continued seven times. It is necessary, therefore, to analyze the reason for each delay in order to ascertain whether there has been a violation of the IAD requiring dismissal. The first trial was set for January 28, 1985, 56 days after Ronnie arrived in Nevada. The first delay occurred on

January 23, 1985. The January 28, 1985 trial was vacated and reset for April 22, 1985, a delay of 84 days. This delay is attributable to the defendant because he filed a petition for a writ of habeas corpus.

Delay No. 2: On April 15, 1985, the trial was continued to May 28, 1985, a 36 day delay. We find this continuance was granted for good cause. The record shows that David Gibson, Ronnie's counsel, asked for a continuance because Dan Seaton, the prosecutor, was involved in a murder case and had not had an opportunity to respond to a motion to suppress filed on April 12, 1985. Gibson stated that Ronnie agreed with him about the continuance. Seaton joined the request for a continuance and indicated that there might be evidence that would benefit Ronnie. Both parties requested the continuance, which was in their mutual interest.

Delay No. 3: The third continuance was granted on May 28, 1985, in Judge Goldman's chambers, and resulted in the trial date being reset for August 26, 1985, a delay of 90 days. Because the reporter's notes were lost, no transcript of the proceeding is available.[1] Ronnie argues that because there is no transcript showing why the continuance was granted, and no specific finding of good cause by the district court, this time should not be counted against him. We disagree. The July 1, 1985 and July 3, 1985 minute entries clearly indicate that the May 28, 1985 hearing was continued for plea negotiations, which ultimately failed. United States v. Odom, 674 F.2d 228, 230 (4th Cir. 1982), *cert. denied,* 457 U.S. 1125 (1982), found the defendant had undertaken a course of action inconsistent with the IAD by bargaining for a plea. We hold the minute entries are sufficient evidence that the trial was continued for good cause.

Delay No. 4: Over Ronnie's objection, the August 26, 1985 trial date was continued until September 9, 1985, a 14 day delay, because Dave Gibson, the public defender representing Ronnie, was in a murder trial. We hold that this continuance was granted for good cause. *See* United States v. Scheer, 729 F.2d 164, 168 (2d Cir. 1984) (defendant charged for seven days to accommodate the rescheduling request of defense counsel). If the court had not

---

[1]As as separate issue, Snyder argues that if we attribute the May 28, 1985 continuance to him, he is entitled to a new trial because his due process rights have been violated due to the lack of the transcript. We disagree. The lack of a transcript, without more, is not sufficient justification for a reversal. Bergendahl v. Davis, 102 Nev. 258, 260, 720 P.2d 694, 695 (1986). We hold the minute entries adequately demonstrate that a continuance was issued for good cause.

granted the continuance, Mr. Gibson would have been forced to withdraw, causing additional delay, or argue two cases in different departments simultaneously.

Delay No. 5: At the September 4, 1985 calendar call for the September 9, 1985 trial, the State said it was ready for trial. However, on the day of trial, the State filed and was granted a motion to compel production of fingerprint and palm print exemplars, and to amend Count III of the information and add habitual criminal language. As a result, the public defender requested a continuance pending a comparison of the prints with those found on Walker's car. Trial was reset for November 4, 1985, a delay of 56 days. Although this delay could technically be attributed to Ronnie, we agree that this time should not be charged to him. The State's late filing left counsel with little choice.

Delay No. 6: Ronnie concedes, and we agree, the continuance from November 4, 1985 until December 23, 1985 was granted for good cause. Ronnie's attorney became ill and could not appear at trial. This delay was 49 days.

Delay No. 7: On December 20, 1985, James Smith, the newly appointed counsel for Ronnie, requested a continuance because he could not locate witnesses. Over Ronnie's objection, the trial was continued until February 3, 1986, a 42 day delay. We hold that this delay is attributable to Ronnie.

Upon thorough review of the record, we find each of the continuances of Ronnie's trial, except for the September 9 trial continuance, was either granted by the district court for good cause, or directly attributable to Ronnie. Accordingly, the total number of days counted against the IAD's 120 day limitation equals 112 days. Therefore, while we express sympathy for the lengthy delay in adjudicating the charges against Ronnie, we hold that there has been no violation of NRS 178.620, Article IV(c).

Ronnie argues that his conviction must be overturned because he was never asked to plead to the charges against him. NRS 174.015 provides that "[a]rraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to him the substance of the charge and calling him to plead thereto. . . ." Ronnie argues that a criminal case without a plea is like a civil case without an answer; there are no issues framed for trial and nothing to try. We hold, however, that Ronnie has waived his right to a formal arraignment by proceeding to trial without objecting to the absence of a plea. In Garland v. Washington, 232 U.S. 642 (1914), the Supreme Court said:

> A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.

*Id.* at 646, quoting with approval Justice Peckham's dissenting opinion in Crain v. United States, 162 U.S. 625, 649 (1896); *see also* State v. Peterson, 681 P.2d 1210 (Utah 1984).

Ronnie relies on older cases reflecting an earlier system of pleading which gave greater weight to strict adherence to procedural formalities. *See* Burroughs v. State, 143 N.W. 450 (Neb. 1913); State v. Walton, 91 P. 490 (Or. 1907); Hanley v. Zenoff, 81 Nev. 9, 398 P.2d 241 (1965).[2] Ronnie's failure to plead did not deprive him of any substantial rights, nor did it change the course of his trial. Since he proceeded without objection to a trial on the merits as if a plea of not guilty had been entered, we hold that he effectively waived his right to a formal arraignment.

Ronnie argues that evidence seized as a result of an illegal, warrantless search of his apartment should have been suppressed because none of his brothers had the authority to consent to a search of his apartment. We disagree. The Fourth Amendment prohibits searches conducted without a warrant unless they fall within a "few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218 (1973). One such exception is a search conducted pursuant to proper consent voluntarily given. *See* United States v. Matlock, 415 U.S. 164 (1974). Valid consent to search can be obtained from a third party who possesses common authority over or other sufficient relationship to the premises. *Id.* at 171.

Many jurisdictions, including the 9th Circuit, hold a search is not invalidated where a police officer in good faith relies on what reasonably, if mistakenly, appears to be a third party's authority to consent to the search. *See* United States v. Hamilton, 792 F.2d 837, 841-42 (9th Cir. 1986); Nix v. State, 621 P.2d 1347, 1349 (Alaska 1981); People v. Gorg, 291 P.2d 469 (Cal. 1955). Based upon the facts of this case, we hold that the Las Vegas Metropolitan police officers reasonably relied on Gary and Larry Snyder's

---

[2]The arraignment procedure applicable in *Hanley* was superseded by the present procedure in 1967. *See* NRS Chapter 174.

apparent authority to consent to a search of the apartment. At 4:00 a.m. the police found Larry Snyder sitting outside the apartment where he had been shot. He told them they could find marijuana in the apartment. When they returned to the apartment that same morning, Gary Snyder opened the door, let them in, and consented to a search. Gary was confined to a wheelchair. There is no indication that Gary told the police he was just a guest or non-occupant. Under these circumstances, we hold that it was not unreasonable for the police to assume that Larry and Gary occupied the house. Therefore, the district court did not err in denying Ronnie's motion to exclude evidence obtained as a result of the search.

We have examined each issue raised on appeal and find it to be without merit. Accordingly, we affirm the judgment of conviction.

GUNDERSON, C. J. and STEFFEN, YOUNG, and MOWBRAY, J.J., concur.