Raymond McNAIRY, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–183–CR.

Court of Appeals of Texas, Austin.

Sept. 20, 1989.

Charles O. Grigson, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, ABOUSSIE and ONION,* JJ.

ONION, Justice (Retired).

Appellant was convicted of aggravated possession of a controlled substance, to wit: methamphetamine in the amount of 28 grams or more but less than 400 grams. He was jointly indicted with Edward Fancher, Saundra Hammons and Virgil Reynolds. Upon his plea of guilty before the court, and in accordance with a plea bargain, Appellant's punishment was assessed at six (6) years imprisonment in the Department of Corrections.

In light of Tex.R.App.P. 40(b)(1) and appellant's notice of appeal in accordance with such rule the only issue presented on appeal is whether the trial court erred in overruling appellant's pretrial motion to suppress evidence. The fact that appellant entered a plea of guilty and made a judicial confession does not constitute a waiver of the right to complain on appeal of the pretrial ruling. *See Morgan v. State,* 688 S.W.2d 504 (Tex.Cr.App.1985); *Johnson v. State,* 722 S.W.2d 417 (Tex.Cr.App.1986); *Statman v. State,* 740 S.W.2d 464 (Tex.Cr. App.1987) (all decided under former article 44.02, Tex.Code Cr.P.).

In a bare bones type motion to suppress, appellant sought to suppress "1. All tangible evidence ... *seized pursuant to a search warrant* issued February 2, 1988, for 16202 Fagerquist, Del Valle, Travis County, Texas.... 6. All matters seized by law enforcement officers were obtained illegally, in violation of defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9 and 10 of the Constitution of the State of Texas and Article 1.05, 38.22 and 38.23 CCP." (Emphasis supplied).

At the hearing on the motion to suppress, although not technically following the procedure discussed in *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Cr.App.1986), the State called two witnesses to establish consent to search the premises in general and the acquisition and execution of a search warrant regarding the mobile trailer houses in particular. Appellant called no witnesses.

On February 2, 1988, Dan Hinkle, Travis County Deputy Sheriff, assigned to the Organized Crime Unit, responded to a call from fellow officers that they had been called to a disturbance involving burning vehicles at a residence at 8104 Linden, Del Valle, and had found a quantity of drugs and paraphernalia. Upon arriving, Hinkle acquired the written voluntary consent of Rhonda Reynolds, an owner, to search the house at 8104 Linden and all outbuildings upon the 10-acre tract involved. The search at 8104 Linden uncovered a methamphetamine lab and other drug-related items.

The officers then began to search the land in back of 8104 Linden. As Deputy

---

* *Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by as-* signment. *See* Tex.Gov't. Code Ann. § 75.003 (1988).

Hinkle and Sgt. Gideon walked down a well-defined path through tall weeds they came within 50 feet of one of the outbuildings, a mobile trailer house, when they both smelled the strong odor of methamphetamine emanating from the trailer. As they proceeded, Hinkle heard the back door of the trailer "thrown open" and heard people running into the nearby brush, but he could not see the individuals because of the tall weeds. Gideon went to the front of the trailer and Hinkle went to the rear where he opened the back door to see if anyone else was present. At this point he observed chemicals associated with the manufacture of methamphetamine stacked just inside the doorway. He secured the trailer and began to ask questions of Rhonda Reynolds, who was present, and learned for the first time that the trailer had been rented to appellant McNairy and an "Edward Fancher and learned that the address was 16202 Fargerquest. Hinkle decided at this point to secure a search warrant before proceeding further.[1] Hinkle acquired a search warrant from a magistrate and returned to the scene. During his testimony, the written consent to search executed by Rhonda Reynolds and the search warrant and the affidavit upon which it was based were admitted into evidence without objection.

Sgt. Ruben Fuentes, Austin Police Department, was called to the scene, and waited there with Sgt. Gideon for Hinkle to obtain the search warrant, and when Hinkle arrived with the warrant he participated in the search as the "seizing officer." He listed the numerous items of methamphetamine, chemicals and equipment found in the trailer during the search pursuant to the warrant. It was this methamphetamine that was the basis of appellant's conviction.

At the conclusion of the suppression hearing, appellant's trial counsel briefly argued "if there was such a consent, such consent could only have lasted until it became clear that someone other than Rhonda Reynolds lived at that home or was staying there or had reason to be there."

Counsel attacked the credibility of Hinkle urging that Hinkle's action in securing the trailer after sighting the chemicals therein rather than completing his search to see if anyone else was in the trailer was illogical; that the officers had insufficient information to secure the trailer and that the trailer was seized when it was "secured." Appellant, who offered no evidence, made no argument concerning the validity of the search warrant which was the sole basis of his motion to suppress.

On appeal appellant urges a single point of error: "There was no probable cause for the warrantless search and seizure of appellant's house." He divides this point of error into four parts: "(A) Summary of argument; (B) No probable cause existed for the initial warrantless search and seizure of appellant's home; (C) The consent allegedly obtained from Rhonda Reynolds to search 8104 Linden did not authorize the search of appellant's residence; (D) The affidavit in support of the search warrant obtained by Officer Hinkle is both invalid on its face and additionally was invalid because any search pursuant to the search warrant was a continuation of a prior invalid search."

The State complains that the "Points of Error" are not separately numbered or otherwise in compliance with Tex.R.App.P. 74(d). That aside, the more serious observation is that the "Points of Error" do not appear to clearly compare with the shotgun suppression motion, the objections, and arguments presented to the trial court in order to preserve matters for review on appeal. *See* Tex.R.App.P. 52(a).

When the State produced the search warrant and its underlying affidavit at the suppression hearing, the burden shifted to the appellant to demonstrate the warrant's invalidity. *Russell, supra; Rumsey v. State,* 675 S.W.2d 517 (Tex.Cr.App.1984); *Miller v. State,* 736 S.W.2d 643 (Tex.Cr. App.1987). This the appellant did not do, although his written motion to suppress solely attacked or called into question the search warrant. Further, the claims now advanced on appeal that the search war-

---

1. A later search revealed that another outbuild-

ing, also a mobile house trailer, was vacant.

rant was invalid on its face (re: property description), that the search pursuant to a warrant was a continuation of a prior invalid search, that the affidavit failed to reflect probable cause, etc., do not comport with contentions urged upon the trial court. In *Writt v. State*, 541 S.W.2d 424, 426 (Tex. Cr.App.1976), it was held that the contention presented on appeal must be the same as that presented to the trial court at the pretrial hearing on the motion to suppress evidence. *See also Darland v. State*, 582 S.W.2d 452 (Tex.Cr.App.1979); Tex.R. App.P. 52(a). Nothing is presented for review regarding the search warrant claims.

It appears that the contentions on appeal that (1) there was a lack of probable cause for the initial warrantless search of the house trailer (when Hinkle first opened the back door to the mobile home), and (2) that the consent to search given by Rhonda Reynolds did not authorize the initial search of the mobile house trailer are presented in forms varied from that urged upon the trial court. Since it may be argued that the specific grounds should have been apparent to the trial court from the context presented, *see* Tex.R.App.P. 52(a), we shall consider the same.

It is well settled that under the Fourth and Fourteenth Amendments to the United States Constitution that a search without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Kolb v. State*, 532 S.W.2d 87, 89–90 (Tex.Cr.App.1976); *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Cr.App. 1988). The same is true of Article I, Sec. 9 of the Texas Constitution. *Kolb, supra.*

One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Kolb, supra; Juarez, supra.*

At the suppression hearing the State assumed its burden of showing that the police had obtained the written consent of Rhonda Reynolds to search, not only the house at 8104 Linden but all the outbuildings on the ten-acre tract. The consent form, introduced into evidence, showed Rhonda Reynolds's signature and reflected that she had been given a warning of her rights prior to executing the same and that it was voluntarily given.

After searching the house at 8104 Linden, the officers in company with Ms. Reynolds walked down a path surrounded by tall weeds towards one of the outbuildings, a trailer house. They smelled the strong odor of methamphetamine emanating from the trailer and heard people, whom they could not see, running from the trailer into the brush. Upon the happening of these exciting and sudden events, Officer Hinkle, acting pursuant to the consent given, rushed to the back door of the trailer and opened it to see if anyone else was in the trailer. Just inside the door way, he observed chemicals associated with the manufacture of methamphetamine. This was the warrantless search of which appellant now complains. The record was not well developed as to what else Hinkle observed around the trailer, but he immediately secured the trailer and began to make inquiries of Rhonda and Virgil Reynolds as to the use of the trailer. He had no prior knowledge as to the nature of the property. Upon learning that the trailer was rented by Reynolds to Fancher and appellant, and that it had a different street address and entrance, and that motor vehicles were parked nearby, he determined to secure a search warrant before proceeding further and he did. The search of the trailer did not begin until he returned with the search warrant, and all the contraband seized was taken in connection with the execution of the search warrant.

■ Third parties can consent to searches if they have control and authority to use the premises being searched. *Becknell v. State*, 720 S.W.2d 526 (Tex.Cr.App. 1986), cert. denied, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987). Appellant contends that Rhonda Reynolds had no authority to consent to a search of the trailer where he lived, and while she may have

properly consented to a search of other portions of the ten-acre tract, it stopped at the door step of his dwelling.[2]

We conclude the so-called apparent authority doctrine has application here. *See* 3 LaFave, Search and Seizure § 8.3(g), at 261 (2d ed. 1987). The doctrine originated in *People v. Gorg,* 45 Cal.2d 776, 291 P.2d 469 (1955), where it was held that when officers have acted in good faith upon the consent given by an owner in conducting a search, the evidence obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority.

In *Nix v. State,* 621 P.2d 1347, 1349–50 (Alaska 1981) the court stated:

> We now align ourselves with those authorities, representing the majority view, which hold that apparent authority alone is required. We adopt this view because it is more consistent with the fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances. Moreover, the exclusionary rule imposed where the fourth amendment is violated is thought to operate to deter police from unreasonable searches and seizures. Obviously, there can be no deterrent effect where the police believe that they are acting reasonably and lawfully and it is only by a hindsight determination that actual authority is found to be wanting.[3] This does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party's assertions of authority if those assertions appear unreasonable.

And the extent of necessary police inquiry may depend upon other circumstances in each case. *People v. Adams,* 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981).

Under the doctrine the test "focuses on apparent authority rather than actual authority." *State v. Castaneda,* 150 Ariz. 382, 724 P.2d 1 (1986). Thus, if it reasonably appears that a third party had common authority over the premises then such party's consent to search is valid. *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983), cert. denied, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). *See also Snyder v. State,* 103 Nev. 275, 738 P.2d 1303 (1987); *United States v. Hamilton,* 792 F.2d 837 (9th Cir.1986).

In the instant case the police belief that Rhonda Reynolds had authority to consent to search all of the outbuildings was reasonable, and when ambiguous circumstances arose they immediately stopped and made necessary inquiries. Being satisfied thereafter that a search warrant was required Officer Hinkle proceeded to obtain one. The fact that he opened the door to the trailer house and saw therein certain chemicals while acting under the reasonable belief of a valid consent after immediately detecting a strong odor of methamphetamine and hearing unknown persons fleeing from the trailer does not constitute an invalid warrantless search, or taint the subsequent search under the warrant.

The judgment is affirmed.

---

**2.** Appellant did not allege in his suppression motion or assert at the suppression hearing just what his interest in or his relationship to the premises was, or expressly claim that his right to "the reasonable expectation of privacy" was violated. The State seemed to assume and accept the fact that appellant lived on the premises, and the meager evidence offered seemly supported that conclusion, but the true nature of the relationship between appellant and Reynolds as to the premises is not clear from the record.

**3.** *See also* Comment, 53 B.U.L.Rev. 1087, 1110 (1973).