BOWEN, Judge.
James E. Broughton was convicted of first degree robbery in violation of Ala. Code 1975, § 13A-8-41, and sentenced to life imprisonment as a habitual felony offender. He raises two issues on this appeal from that conviction.
I.
The defendant contends that the consent to search was invalid for “lack of specificity” and because the third party consent was ineffective.
On October 19, 1988, Investigator David Berry of the Tallapoosa County Sheriff’s Department went to the residence of Era Lee (Broughton) Thomas in Camp Hill, Alabama, obtained Mrs. Thomas’s consent to search the residence, and seized a pair of shorts and tennis shoes from the basement. Contrary to the defendant’s assertion, all the evidence shows that Mrs. Thomas’s consent was both knowingly and voluntarily obtained.
The evidence shows that Mrs. Thomas owned the house, which had an upstairs portion and a basement. Mrs. Thomas lived in the upstairs portion of the house with her mother, her granddaughter, and two foster children. The defendant is Mrs. Thomas’s grandson. He “stayed” in the basement along with Mrs. Thomas’s two sons.
Investigator Berry stated that he had known Mrs. Thomas “for many years.” He testified:
“And I talked to her about the store ... robbery. And I asked her had James been staying there and she said he had. And I asked her, could I see his room. She said I could. And I asked her would she give me permission to look around. She said she would. Also produced what we call a permission to search form. I read it to her, I explained it to her myself. ... I read it to her, and she signed it.”
The basement had an entrance from the outside and was connected to the upstairs portion of the house by stairway. The basement consisted of one large room and a bathroom. Investigator Berry testified that Mrs. Thomas told him that the defendant “stayed there some” and that he was “in and out.”
Mrs. Thomas testified that the defendant “was living with me” and that he was “living in the basement” with her sons, Curtis and Eugene. She stated that she treated the defendant like her child. She testified that “[t]hat was their living quarters.” She stated that “[w]hen they worked and they had money they give me money....” “Well, I cook and feed them when they have money and I cook and feed them when they don’t have money. So, when they work and have money they give me some.” The three men ate their meals in the dining room in the upstairs portion of the house. Mrs. Thomas indicated that the basement was not a separate apartment or separate dwelling unit from her house. She did not take care of the basement and testified that, because of her arthritis, she had not been in the basement “a half a dozen times” in the past three years.
Mrs. Thomas testified that the defendant’s probation officer telephoned and asked if the defendant “could stay with me, could I let James stay with me and give him something to eat and a place to stay *1267 until he could get him work to do. And help himself.” The defendant got a job and started paying money to Mrs. Thomas. Mrs. Thomas testified that she told “the boys” “all the time” that they had to have a job or they could not stay there.
Depending upon the factual circumstances, a grandparent may have the authority to consent to a search of the grandchild’s room. Annot., 4 A.L.R.4th 196, § 14 (1981).
It is the opinion of this Court that the search of the basement should be upheld because it was reasonable for Investigator Berry to conclude that Mrs. Thomas had the apparent authority to authorize that search. Illinois v. Rodriguez, — U.S. -, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); People v. Gorg, 45 Cal.2d 776, 291 P.2d 469 (1955). See 3 W. LaFave, Search and Seizure § 8.3(g) (2d ed.1987).
“It is well settled that under the Fourth and Fourteenth Amendments to the United States Constitution that a search without a warrant issued upon probable cause is ‘per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.’ Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967)....
“One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)....
[[Image here]]
“Third parties can consent to searches if they have control and authority to use the premises being searched. Becknell v. State, 720 S.W.2d 526 (Tex.Cr.App.1986), cert. denied, 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 865 (1987)....
“We conclude the so-called apparent authority doctrine has application here. See 3 LaFave, Search and Seizure § 8.3(g), at 261 (2d ed.1987). The doctrine originated in People v. Gorg, 45 Cal.2d 776, 291 P.2d 469 (1955), where it was held that when officers have acted in good faith upon the consent given by an owner in conducting a search, the evidence obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner’s authority.
“In Nix v. State, 621 P.2d 1347, 1349-50 (Alaska 1981), the court stated:
“We now align ourselves with those authorities, representing the majority view, which hold that apparent authority alone is required. We adopt this view because it is more consistent with the fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances. Moreover, the exclusionary rule imposed where the fourth amendment is violated is thought to operate to deter police from unreasonable searches and seizures. Obviously, there can be no deterrent effect where the police believe that they are acting reasonably and lawfully and it is only by a hindsight determination that actual authority is found to be wanting. This does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party’s assertions of authority if those assertions appear unreasonable.
“And the extent of necessary police inquiry may depend upon other circumstances in each case. People v. Adams, 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981).
“Under the doctrine the test ‘focuses on apparent authority rather than actual authority.’ State v. Castaneda, 150 Ariz. 382, 724 P.2d 1 (1986). Thus, if it reasonably appears that a third party had common authority over the premises then such party’s consent to search is valid. State v. Girdler, 138 Ariz. 482, 675 P.2d 1301 (1983), cert.denied, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). See also Snyder v. State, 103 Nev. 275, 738 P.2d 1303 (1987); United States v. Hamilton, 792 F.2d 837 (9th Cir.1986).”
*1268 McNairy v. State, 777 S.W.2d 570, 573-74 (Tex.App.1989). See also Illinois v. Rodriguez, 110 S.Ct. at 2798-2802. “Apparent authority is enough. Just as police may have probable cause to act even though their source was lying, so they may act when the person giving consent had apparent authority.” United States v. Rodriguez, 888 F.2d 519, 523 (7th Cir.1989).
We have neither found nor been cited to any authority supporting the proposition that a written consent to search must be as specific and particular as a search warrant in describing the' place to be searched.
“When the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have been given by the consent.
“... In the search warrant context, the problem is one of the particularity of description in relation to a prior showing of probable cause, which is unlike the question to be resolved in a consent search context [which involves how far the defendant intended the consent to extend or how the police reasonably construed the consent].”
3 W. LaFave § 8.1(c), at 160 (footnotes omitted). The consent to search in this case was not void because it authorized a search “of the premises and property, including all buildings and vehicles, both inside and outside of the property located at North Main St., Camp Hill, Al.” Here, there is no contention that the search went beyond the limits of the consent. The motion to suppress was properly denied.
II.
The defendant argues that a pretrial photographic lineup was highly suggestive and required the suppression of the in-court identification by the victim. We find no factual or legal merit to this argument.
The robbery occurred on October 12, 1988. The victim was able to give a description of her assailant to the investigating officers. The day after the robbery, Investigator Berry showed the victim six mug shot photographs of six different black males. The victim positively identified the defendant’s photograph. Berry testified that “based on the description and the general appearance of what the victim in the case told me, I try to get a lineup as close to their physical features, particularly their hair, their dress as I can.” At the time, Berry prepared the photographic lineup, he had no reason to suspect the defendant.
We have examined the photographs in the lineup and find that they are not suggestive. In fact, at trial defense counsel argued that the photographic identification should be suppressed because the victim described a robber without a mustache, while the photograph depicted the defendant with a mustache.
The fact that the victim saw the defendant at his parole revocation hearing after she had identified him in the photographic lineup did not “taint” her in-court identification. Here, the identification testimony did not result from procedures that were unnecessarily suggestive and conducive to an irreparably mistaken identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Riggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
III.
In a pro se brief, the defendant argues that his trial counsel was ineffective for three reasons and his appellate counsel was ineffective for one reason.
Appellate counsel was not ineffective for failing to argue a violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Trial counsel did file a timely Batson objection. The record supports the finding of the trial judge that the prosecutor gave race-neutral reasons for striking five blacks from the venire. Those reasons were:
1) There was a pending investigation of one veniremember’s spouse directly involving the district attorney’s office and the spouse had a federal conviction.
*1269 2) One veniremember had a pending child support case in the child support prosecution division of the district attorney’s office. The prosecutor in that case was the wife of the prosecutor in the defendant’s case. There were “some feelings” between the prosecutor’s wife and the venire-member because the veniremember had been forced to take a blood test for paternity-
3) One veniremember and her family had had numerous problems with the Camp Hill police department and the Camp Hill municipal court. The prosecutor was the municipal judge for the City of Camp Hill.
4) One veniremember was a teacher at the school the defendant attended at the time the defendant was in school. She knew the defendant as a student and had served as a foreperson on an acquitting jury in federal court involving robbery.
5) One veniremember knew the defendant and his grandmother. Either the veniremember or her spouse had a DUI ease involving either a state trooper or the chief of the Camp Hill police department. Neither trial nor appellate counsel were ineffective with regard to the Batson issue.
Trial counsel was not ineffective for failing to request the trial judge to instruct the jury on the defendant’s constitutional right not to testify in his own behalf.
“Although defense counsel did not request a final instruction regarding the petitioner’s failure to testify, we note that defense counsel may have considered that the giving of a ‘no adverse inference’ instruction might have drawn undue emphasis on the fact that petitioner did not testify. In any event, this Court will not speculate on what may have been the most advantageous strategy in a particular case. Young v. State (1985), Ind., 482 N.E.2d 246. The decision of whether to request the additional instruction was strictly a matter involving counsel’s professional judgment in formulating trial strategy. His decision in this case cannot be viewed as constituting ineffective assistance.”
Van Evey v. State, 499 N.E.2d 245, 247 (Ind.1986). See generally Annot., 3 A.L. R.4th 601, § 20(b) (1981). Cf. Tucker v. State, 429 So.2d 1165, 1171 (Ala.Cr.App. 1983), (where the appellant argued that the trial judge erred in giving a no adverse inference instruction where defense counsel had not requested such an instruction).
The defendant also argues that trial counsel was ineffective at the sentencing hearing by failing to require the State to prove that the defendant was represented by counsel on his prior convictions. This argument is without factual merit. The record contains certified copies of the defendant’s three prior felony convictions. Each document affirmatively shows that the defendant was represented by counsel. See Meadows v. State, 473 So.2d 582, 588 (Ala.Cr.App.1985); Tate v. State, 435 So.2d 190, 195 (Ala.Cr.App.1983).
The defendant has totally failed to demonstrate that either trial or appellate counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.