# IN THE SUPREME COURT OF THE STATE OF NEVADA

EDMOND PAUL PRICE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64281

FILED

MAY 1 0 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF LIMITED REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of conspiracy to commit kidnapping, conspiracy to commit robbery, false imprisonment with a deadly weapon, burglary while in the possession of a deadly weapon, robbery with the use of a deadly weapon, and battery with use of a deadly weapon resulting in substantial bodily harm. Eighth Judicial District Court, Clark County; James Crockett, Judge. We order a limited remand for an evidentiary hearing on whether appellant Edmond Price's right to a speedy trial under the Interstate Agreement on Detainers was violated and retain jurisdiction over all other issues raised by Price.

On June 26, 2010, Ronald Wall and Price met in a hotel room at Whiskey Pete's in Primm, Nevada, where Wall intended to buy gold from Price. Evidence adduced at trial showed that, at some point during the transaction, Price and his associate, Victoria Edelman, attacked Wall and beat him with a variety of items they found in the hotel room.[1] After

---

[1]Edelman was originally a codefendant in this case. However, on August 9, 2011, the district court granted her motion to sever.

Wall stopped struggling, they tied him up using duct tape, electrical tape, and a phone cord. They took Wall's money that he brought to purchase the gold from Price and left him bleeding on the hotel room floor.

In August 2010, after the underlying incident in Primm, Price was in a California prison serving time on an unrelated matter. On October 20, 2010, Price was charged for the crimes he allegedly committed against Wall. In February 2011, the Clark County District Attorney's Office requested a detainer be lodged against Price, who was still in prison in California. On February 23, 2011, pursuant to the Interstate Agreement on Detainers[2] (IAD), Price initiated an Article III request for final disposition of untried indictments, informations, or complaints. The State received Price's request on April 29, 2011. However, for reasons discussed below, Price's trial did not begin until May 20, 2013. On May 29, 2013, a jury found Price guilty of conspiracy to commit kidnapping, conspiracy to commit robbery, false imprisonment with a deadly weapon, burglary while in the possession of a deadly weapon, robbery with the use of a deadly weapon, and battery with the use of a deadly weapon resulting in substantial bodily harm.

*The Interstate Agreement on Detainers*

Article III of the IAD "provides that once Nevada files a detainer against a prisoner in another state, the prisoner may request timely disposition of the untried indictment upon which the detainer was

---

[2]"The IAD is an interstate compact approved by the United States Congress to which Nevada is a party." *Wilson v. State*, 121 Nev. 345, 363, 114 P.3d 285, 297 (2005). It "specifies the procedures by which a prisoner may request speedy disposition of the charges pending against him in a jurisdiction other than where he is incarcerated." *Id.* It "is codified in Nevada law at NRS 178.620." *Id.*

based."[3] *Diaz v. State*, 118 Nev. 451, 453-54, 50 P.3d 166, 167 (2002). After receiving the request for disposition, "the State has 180 days to bring the defendant to trial." *Id.* at 454, 50 P.3d at 167. If the State does not meet this requirement, "the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." NRS 178.620 (Art. V(c)).

"Article III(a)'s 180-day time period does not begin to run until a prisoner's request for final disposition of the charges against him is actually delivered to the court and the prosecuting officer of the jurisdiction that lodged the detainer against him." *McNelton v. State*, 115 Nev. 396, 414, 990 P.2d 1263, 1275 (1999). Further, the 180-day timeline may be tolled for the following reasons:

> (1) to allow the trial court to grant any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, (2) for as long as the defendant is unable to stand trial, or (3) for any period of delay in bringing the defendant to trial caused by the

---

[3]The State argued that Price waived his IAD right to a speedy trial because he purposefully delayed trial and pursued extraordinary relief through various pretrial writs of habeas corpus and other motions. *See Snyder v. State*, 103 Nev. 275, 277, 738 P.2d 1303, 1305 (1987) ("[A] prisoner may waive his IAD rights if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD."). However, a defendant does not waive his IAD rights simply by litigating his case and any delays caused by the defendant are not counted against the IAD timeline. *See Haigler v. United States*, 531 A.2d 1236, 1242 (D.C. 1987) ("Appellant could not be understood to waive his rights under the IAD simply because he exercised his right to make pretrial motions. . . . [Instead,] [t]he time consumed in consideration of appellant's motions . . . is simply not counted.").

defendant's request or to accommodate the defendant.

*Saffold v. State*, 521 So. 2d 1368, 1371 (Ala. Crim. App. 1987) (internal citations omitted). Tolling periods due to the defendant do not last indefinitely, but only for the time it takes to resolve the defendant's issue. *See Diaz*, 118 Nev. at 453-55, 50 P.3d at 167-68.

*April 29, 2011 - August 9, 2011: timeline ran 102 days*

Though arguing throughout the proceedings that the 180-day timeline started on April 29, 2011, as that was the day the State received Price's Article III request, the State misread Price's brief as conceding that the timeline started on August 9, 2011. Price in no way made such a concession. At oral argument, the State admitted that the timeline ran from April 29, 2011, until August 9, 2011. Price conceded in his brief that the timeline began tolling on August 9, 2011, because he consented to Edelman's request for a continuance.[4] Thus, the parties appear to agree that 102 days of the 180-day IAD period ran between April 29 and August 9, 2011.

*August 9, 2011 - June 14, 2012: time tolled*

Between August 9, 2011, and May 17, 2012, Price concedes that he raised several issues requiring litigation, such that the delay was

---

[4]At oral argument, Price changed his position and argued that September 22, 2011, was when the timeline began tolling, not August 9, 2011. He stated that the caselaw was split on whether agreeing to a codefendant's continuance actually tolls the time. However, he did not cite to any cases showing this split in authority. Therefore, we will not address this argument. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court.").

attributable to him, tolling the 180-day timeline. On May 17, 2012, the district court, following our order, dismissed Price's original indictment. *See Price v. Eighth Judicial Dist. Court*, Docket No. 60440 (Order Granting Petition, May 10, 2012). On May 25, 2012, Price was reindicted. Price concedes that these 8 days can also be attributed to him for tolling purposes.

From May 25, 2012, to June 5, 2012, Price disputed whether the district court could remand him on the new indictment. On June 14, 2012, Price was arraigned on the new indictment. Price took "responsibility for his pre-arraignment delay on the new case."

*June 14, 2012 - July 30, 2012: time ran 46 days*

Both parties began the 180-day timeline again on June 14, 2012. At the June 14 hearing, trial was set for July 30, 2012. Both parties agreed in their briefs that the 180-day timeline was running during this 46-day period.[5]

*July 30, 2012 - January 28, 2013: time tolled*

On July 30, 2012, Price requested a continuance after the State disclosed Edelman as a cooperating witness. Trial was set again for January 28, 2013. Since this continuance was arguably due to Price, the IAD timeline was tolled once again.[6]

---

[5]At oral argument, the State changed its position and argued that July 6, 2012, was when the time began tolling again instead of July 30, 2012. We will not address this argument because, as discussed below, the 24-day difference is immaterial for our purposes.

[6]Price argued at oral argument, not in his brief, that this time should not count toward the IAD timeline because he was forced to ask for the continuance due to the State's naming of Edelman as a witness five days before trial. *See Snyder*, 103 Nev. at 279, 738 P.2d at 1306 (deciding

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*January 28, 2013 - January 31, 2013: time ran 3 days*

On January 24, 2013, the district court vacated the January 28, 2013, trial date after this court stayed the district court's erroneous order to consider the State's emergency petition for a writ of mandamus regarding that order. On January 25, 2013, this court granted the petition. *See State v. Eighth Judicial Dist. Court*, Docket No. 62464 (Order Granting Petition, January 25, 2013). On January 31, 2013, the parties met to discuss a new trial date. The State conceded that these 3 days count toward the IAD timeline. At this point, 151 days of the 180-day timeline had passed.

*January 31, 2013 - May 20, 2013: disputed 109 days*

At the January 31, 2013, hearing the following exchange occurred:

> Mr. Coyer [defense attorney]: . . . . [T]he Defense is still requesting the speediest trial we can get for Mr. Price. I would ask for an expedited resolution of that issue and a very quick trial setting, Your Honor.

---

*...continued*

that the defendant's continuance should not be attributable to him because the State's late filing left him with no choice). However, in the district court, Price explicitly agreed to toll this period and stated that he would not argue about this period going forward in exchange for the granting of the continuance. Now, Price argues on appeal that the State's "bad faith gamesmanship" in not timely providing him with Edelman's proffer after the continuance was granted invalidates this waiver. Yet, Price's waiver of his IAD argument was not conditioned on the State providing Edelman's proffer. Thus, we will not address Price's contention at oral argument.

The Court: I was hoping that the 25th of February was going to be our trial date in here, but you can't do it on the 25th.

Mr. Stanton [prosecution]: That's correct, and neither can Miss Clowers.

The Court: Okay. So --

Mr. Coyer: We can do February 11th, if the Court has that open.

The Court: The State's already indicated there is no way they can get their witnesses together by February 11th.

Mr. Stanton: I got a trial in a child murder case.

The Court: Okay.

Mr. Stanton: It's been set for a year.

The district court then chose May 20, 2013, as the trial date based upon Mr. Stanton's schedule and ignored Price's objection. We note that due to the 151 days that count toward the timeline and this 109-day period that is in dispute, whether the January 31, 2013 to May 20, 2013, continuance was a necessary and reasonable continuance for good cause that tolled the IAD timeline is outcome determinative.

The State argues that this was such a continuance since Mr. Stanton's child murder trial date could not be moved, despite the fact that he was not the prosecutor when the case went to trial in May. However, it is unclear from the record when Mr. Stanton's child murder trial actually started and whether it interfered with his ability to try the case on both dates. The above-quoted portion of the record makes it seem as though it conflicted with both trial dates, but nothing in the record shows that Mr. Stanton's child murder trial was scheduled to last two weeks. The State's brief confuses matters as it argued that the child murder trial interfered

with the February 25 trial date and failed to discuss the February 11 trial date. *See infra* note 7.

At oral argument, the State averred that Ms. Clowers also had a scheduling conflict that prevented the February dates. Yet, the State's brief does not make or suggest this argument.[7] Although the record supports that Ms. Clowers had a trial date in February, the State provided this court with no information about the asserted conflicting trial commitment.[8] *See Brown v. Wolff*, 706 F.2d 902, 906-07 (9th Cir. 1983) (placing burden on the State to show good cause for delaying trial beyond 180-day limit); *State ex rel. Hammett v. McKenzie*, 596 S.W.2d 53, 59 (Mo. Ct. App. 1980) (recognizing that if the prisoner complies with the procedural requirements of the IAD, "the burden shifts to the State to produce evidence on the record that there was good cause to delay trial beyond 180 days"). Again, we do not know when this trial was scheduled to start, what it involved, and whether it interfered with both proposed

---

[7]The State's brief says, "[u]nfortunately, *one* of the prosecutors was unavailable on *February 25, 2013*, due to a previously set child murder trial." (Emphasis added.) Later on, the State argued, "[o]n January 31, 2013, the State indicated that *one* of the prosecutors was trying a child murder case which had been set for a year, and as such was unavailable for the proposed February trial *date*." (Emphasis added.) There is no mention of the February 11 trial date or of a second prosecutor who had a scheduling conflict.

[8]Besides the quoted portion above, the other evidence of Ms. Clowers' trial schedule comes from the hearing on Price's second motion to dismiss for violation of the IAD's speedy trial provision where she stated: "For the February date; yes, there are times because Mr. Stanton and I have so many cases, and our cases aren't the type that we can handle [sic] them off. We have to stick with our trials. The February dates didn't work."

trial dates or only one.[9] Of note, it is also not clear that both Mr. Stanton and Ms. Clowers were needed to try the case, as Mr. Stanton was not the prosecutor when the case went to trial.

The district court denied Price's second motion to dismiss for violation of the IAD's speedy trial provision by simply stating in its order, "the Court having heard the arguments of counsel and finds that all continuances in this case have been reasonable and necessary." At the hearing on Price's motion, the district court indicated that both prosecutors' trial schedule conflicts made the January 31, 2013, continuance reasonable and necessary. Yet, it did not determine whether the continuance was for good cause. Further, the district court did not make any factual findings regarding the trial dates and as our discussion above indicates, the facts surrounding these dates are crucial to any decision on whether the continuance from January 31, 2013, to May 20, 2013, was a necessary and reasonable continuance for good cause.

This court is not a fact-finding body and, thus, it would be inappropriate for us to engage in fact-finding now. *See Ryan's Express Transp. Servs. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance."); *Roberson v. Commonwealth,*

---

[9]At oral argument before this court, the State contended, for the first time, that it could not be ready for the February 11, 2013, trial date because it was eleven days after the January 31, 2013, hearing to set Price's trial date, and it was impossible for the State to get its witnesses together. This argument should be addressed to the district court in the first instance.

913 S.W.2d 310, 314-15 (Ky. 1994) (remanding where the trial court failed to address whether the length of the continuance was for good cause and was necessary or reasonable), *abrogation recognized by Parks v. Commonwealth*, 89 S.W.3d 395 (Ky. 2002). Therefore, we remand to the district court to determine whether Price's IAD right to a speedy trial was violated. Accordingly, we

ORDER this matter REMANDED to the district court for proceedings consistent with this order.

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:  Hon. James Crockett, District Judge
     Coyer Law Office
     Attorney General/Carson City
     Clark County District Attorney
     Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A