TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00266-CR







William Patrick Jones, Appellant



v.



The State of Texas, Appellee







FROM THE COUNTY COURT OF SAN SABA COUNTY


NO. 5,319, HONORABLE HARLEN BARKER, JUDGE PRESIDING







PER CURIAM



 A jury found appellant guilty of possessing less than two ounces of marihuana and
imposed a $500 fine. Controlled Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.121,
1989 Tex. Gen. Laws 2230, 2939 (Tex. Health & Safety Code Ann. § 481.121, since amended). 
Appellant contends the county court erred by overruling his motion to suppress evidence and that
the evidence is legally insufficient to sustain the verdict.

 Appellant, his brother, Jack Jones, and his father, Glen Jones, own three
contiguous tracts of land near Cherokee totalling approximately twenty-six acres. The six
easternmost acres belong to Glen Jones, who lives in a house on the property. Nineteen of the
remaining twenty acres belong to Jack Jones. Appellant owns one acre in the southwestern corner
of the Joneses' property and lives in a cabin thereon. To reach appellant's cabin, one must take
a dirt road that passes Glen Jones's house and crosses both his and Jack Jones's land.

 There is a fence around the perimeter of the Joneses' property, but no fence
separates appellant's one acre from Jack Jones's nineteen acres. A fence between Jack's land and
Glen Jones's six acres is "two-thirds gone." Goats belonging to another member of the Jones
family graze the entire twenty-six acres.

 James Semmler, an investigator with the district narcotics enforcement team,
received information from named and unnamed sources that appellant was growing marihuana. 
Semmler testified, "[T]he allegations were made against Pat Jones, and we -- at the time I didn't
know that there was a difference between his property, his dad's property, or I didn't know his
dad lived there." Semmler and other officers met Glen Jones at his residence and told him what
they had heard. Semmler testified that Glen Jones told them, "Pat lives in the cabin in the pasture
directly behind his house, but the property belongs to him [Glen]." Glen Jones gave the officers
written consent to search his property. In the consent form, the property is described as "the
residence of Glen Jones and Pat Jones."

 The officers took the dirt road and parked near appellant's cabin. Following a
foot path leading from the cabin, the officers found four freshly watered marihuana plants growing
in pots approximately two hundred yards from the cabin. The record reflects that the plants were
found on property belonging to Jack Jones. The officers returned to appellant's cabin, where they
saw watering buckets and empty pots similar to those in which the marihuana plants were
growing. Through an open window, the officers saw a lamp of the type used to grow plants
indoors. The officers did not enter appellant's cabin because, as Semmler explained, "Glen Jones
cannot give consent to search another adult's living quarters."

 Based on Semmler's affidavit summarizing the tips he had received and describing
what he had seen, a warrant was issued to search appellant's cabin. Inside, the officers found a
shotgun, a condenser and flask, and a quantity of marihuana seeds.

 Appellant contends the growing marihuana plants and all the objects found outside
appellant's cabin should have been suppressed because Glen Jones was not authorized to consent
to the warrantless search of appellant's property. Appellant further argues that the illegality of
this initial search tainted the warrant to search inside his cabin and that the evidence found there
also should have been suppressed.

 Appellant's complaint is limited to the officers' entry onto his one acre of land. 
Appellant does not claim any expectation of privacy in Jack Jones's property. Because the
growing marihuana plants were found during a search of Jack Jones's land, appellant lacks
standing to complain of their seizure. The county court did not err by refusing to suppress the
plants.

 The court also did not err by refusing to suppress the evidence observed by the
police during their initial search outside appellant's cabin. The initial entry onto appellant's
property was made with the consent of Glen Jones. At the time Glen Jones gave his consent, he
told the officers that the property belonged to him. As a general rule, a search is lawful if the
police act in good faith reliance on the consent of a person with apparent authority to consent to
the search. McNairy v. State, 777 S.W.2d 570, 574 (Tex. App.--Austin 1989), aff'd, 835 S.W.2d
101 (Tex. Crim. App. 1991). The evidence reflects that the Joneses' twenty-six acres are in one
contiguous tract with little or no internal fencing. There is no evidence that the officers knew
Glen Jones did not own the land on which appellant's cabin was located or that the officers had
a reason to doubt the accuracy of Jones's claim of ownership. Because the officers' reliance on
Glen Jones's consent to search was objectively reasonable under the circumstances, the search was
lawful. 

 In keeping with the rule that a landlord cannot consent to a search of his tenant's
premises, the officers did not enter appellant's cabin until after they obtained a warrant to do so. 
See McNairy, 835 S.W.2d at 105. Appellant contends this search was unlawful because many of
the facts contained in the probable cause affidavit were obtained during the earlier search of the
property surrounding the cabin. Because we find that the earlier search was lawful, this argument
fails.

 Appellant also urges that the probable cause affidavit was inadequate because it
does not demonstrate that the unnamed informer was reliable. In addition to the informer's tip,
the affidavit also described what the officers observed during their initial search outside
appellant's cabin. These observations were sufficient, we believe, to support the magistrate's
conclusion that probable cause existed to search appellant's cabin. Because the reliability of the
informer was not essential to the probable cause determination, any inadequacy in the affidavit
with respect to the informer's credibility is not fatal to the warrant. 

 Finally, appellant contends that the search warrant did not adequately describe the
place to be searched. This contention was not presented to the county court and was therefore not
preserved for review. Tex. R. App. P. 52(a). Point of error one is overruled.

 Appellant's second point of error is that the evidence is legally insufficient to
sustain the conviction. To establish the unlawful possession of a controlled substance, the State
must prove that the accused knowingly exercised care, custody, or control over the substance. 
Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). Appellant stresses that the marihuana
was not growing on his property. There was, however, a trail leading from his cabin to the
marihuana, and watering cans and pots like those in which the marihuana was growing were found
outside the cabin. In addition, marihuana seeds and a "grow light" were found in appellant's
residence. Viewing all the evidence in the light most favorable to the verdict, a rational trier of
fact could have found the essential elements of the offense beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App.
1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). Point of error two is overruled.

 The judgment of conviction is affirmed.


Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: March 29, 1995

Do Not Publish