■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEFFREY DEAN, Respondent. [848 NYS2d 736]—

Carpinello, J. Appeal from an order of the County Court of Greene County (Pulver, Jr., J.), entered September 14, 2006, which granted defendant's motion to suppress certain evidence and dismissed the indictment.

Defendant was indicted on one count each of criminal possession of a controlled substance in the fourth degree and criminal possession of a weapon in the third degree stemming from evidence that drugs and a weapon were found on his person when arrested on the night of May 24, 2005. The arrest took place inside a rental cabin owned by Louis Rolleri. This appeal by the People follows a successful defense motion to suppress this seized evidence and dismiss the indictment.*

Evidence at the suppression hearing established that Rolleri owns a multiunit rental building, as well as the subject cabin, on property in Greene County. For the better part of a decade, Rolleri placed his nephew in charge of the property any time he was away for an extended period of time. The middle of May 2005 was one such time period. In particular, Rolleri had asked his nephew to clean out and rerent the cabin after the current tenant departed.

During the uncle's absence, concerns arose that the cabin was still being occupied even though the tenant had supposedly moved out. The nephew, after confirming that the tenant had in fact moved out of town, conferred with Rolleri, who reiterated that no one was supposed to be living in the cabin and directed him to take whatever steps necessary to remove "whoever was [there]." Thus, on the day in question, the nephew contacted the State Police. He explained to an investigating trooper that he was the caretaker for the property in his uncle's absence, that the cabin was supposed to be empty, that unknown people had been observed showing up late at night and that he had confirmed that the previous tenant had left town. Afraid to go inside the cabin alone, the nephew requested that the trooper go in and get the intruders out.

Armed with this information, the trooper went to the property with the nephew. As the trooper pulled up and activated his lights, he observed a person inside running away from the

---

* At the *Mapp* hearing, the People stipulated that defendant had standing to challenge the search.

window. Unsure at that time whether an ongoing burglary was in progress or just a criminal trespass, this conduct heightened the trooper's concern. The trooper knocked on the door. Although he heard someone unlock the deadbolt, no one opened it. He then let himself inside as the nephew waited on the porch. He very quickly came upon defendant, who was in an agitated state, speaking loudly and incoherently and appeared to be under the influence of drugs. Primarily out of concern for his own safety, the trooper placed handcuffs on defendant and advised him that he was under arrest for criminal trespass. Nearly simultaneously, he also observed a glass tube with jagged edges protruding out of defendant's pocket and drug paraphernalia inside the cabin itself. He removed the glass tube at which time he observed evidence of drugs on it as well. Upon searching defendant incident to the arrest, the subject cocaine and weapon were retrieved.

It is well settled that the police may lawfully conduct a warrantless search of a premises when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over it (*see People v Adams*, 53 NY2d 1, 8 [1981], *cert denied* 454 US 854 [1981]; *People v Cosme*, 48 NY2d 286, 290 [1979]; *see also United States v Matlock*, 415 US 164, 171 [1974]). Moreover, "where the searching officers rely in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as the result of such a search should not be suppressed" (*People v Adams*, 53 NY2d at 9; *see Illinois v Rodriguez*, 497 US 177, 183-186 [1990]).

Here, "based upon an objective view of the circumstances present" (*People v Adams,* 53 NY2d at 9), the trooper's belief that the nephew, as the caretaker of the property, had authority to consent to the search of a rental unit that was supposed to be vacant was reasonable (*see id.*; *People v McMahon*, 238 AD2d 834, 836 [1997]; *People v Campbell*, 215 AD2d 120 [1995], *affd* 87 NY2d 855 [1995]; *compare People v Gonzalez*, 88 NY2d 289, 295 [1996]). Stated otherwise, it was reasonable to conclude that the nephew had authority to permit the trooper to enter a rental unit that he, as well as Rolleri, believed to be empty to investigate the complaint of intruders inside (*see People v McMahon, supra*). While defendant apparently believed he had a right to live in the cabin based on an alleged oral sublease with the departing tenant, this arrangement was never conveyed to Rolleri or the nephew; thus, their rights, as property owner and caretaker, respectively, to permit access inside the cabin remained intact (*compare People v Ponto*, 103 AD2d 573 [1984]).

1232

Cardona, P.J., Mercure, Crew III and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, motion denied and matter remitted to the County Court of Greene County for further proceedings not inconsistent with this Court's decision.