OPINION OF THE COURT
Memorandum.
Order reversed on the facts, defendants’ motions to suppress evidence denied, informations reinstated and matters remanded to the Criminal Court for all further proceedings.
Defendants were charged in separate informations with eight counts of injuring animals and failure to provide proper sustenance (Agriculture and Markets Law § 353). They moved to *51 suppress evidence obtained when a special agent of the American Society for the Prevention of Cruelty to Animals (ASPCA) (see CPL 2.10 [7]; 2.20 [1] [a], [c]), following up on an anonymous complaint, approached defendant Delaney’s home in Staten Island on October 6, 2005, inquired of the conditions of defendants’ dogs and cats, asked Delaney whether the animals could be brought outside for his inspection, and made an assessment of each animal’s health. The special agent then seized some of the animals and brought them to a veterinarian for examination.
The special agent’s testimony at the suppression hearing indicated that on the following day, October 7, he received a voice mail from defendant Lewis expressing obscenities and a threat to sue. The special agent and Lewis met that afternoon in front of an ASPCA building in Manhattan. Lewis said that most of the dogs and cats belonged to him. His work required him to travel back and forth to North Carolina, but he would return to Staten Island and help take care of the animals when he was there. Both the October 6 and October 7, 2005 incidents were videotaped by a film crew from a cable television show, Animal Planet. The special agent also testified that on October 27 he returned to Staten Island to tell Lewis what had happened to the animals after they were taken. Lewis explained that he was indeed caring for the animals and helping Delaney as well with their care. After Lewis admitted that the animals were in his care and custody, the special agent arrested Lewis. Delaney was not at home that day and was given an appearance ticket on November 2, the same day that Lewis and he, with their attorneys present, signed forms relinquishing ownership of their animals.
Following the suppression hearing, the Criminal Court suppressed the evidence and dismissed the informations.
On appeal, the People rely on defendant Delaney’s giving his consent, by bringing the animals outside pursuant to the special agent’s request, as “a valid substitute for probable cause” (People v Hodge, 44 NY2d 553, 559 [1978]) for a search. It is well settled that the People bear a heavy burden to establish that consent is freely given and that where circumstances objectively reveal overbearing official conduct in obtaining apparent consent to search, voluntary consent is absent (People v Gonzalez, 39 NY2d 122, 124, 128 [1976]). In determining whether a consent was voluntary, a court should consider a variety of factors including whether the defendant was in custody *52 or under arrest, whether he knew he could refuse to consent, whether he had been threatened or coerced, whether he had previously dealt with the police, and whether he acted in any fashion suggesting noncooperation (id. at 128-130; People v Caldwell, 221 AD2d 972 [1995]).
An appellate court should give much weight to the factual findings of a suppression court, which had the peculiar advantages of having seen and heard the witnesses (People v Prochilo, 41 NY2d 759, 761 [1977]), and its findings should not be disturbed unless clearly erroneous (People v Morales, 210 AD2d 173 [1994]). Nevertheless, on the basis of the record before us, we are of the view that the People sustained their “heavy burden” (Gonzalez at 128) of establishing that Delaney voluntarily consented to the search. He was not in custody or under arrest, but, rather, was unfettered on the stoop of his home. Although Delaney was not told by the special agent that he had the right to refuse to consent, it has been observed that “[voluntariness is a question of fact to be determined from all the circumstances, and while the subject’s knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent” (Schneckloth v Bustamonte, 412 US 218, 248-249 [1973]; 4 LaFave, Search and Seizure § 8.2 [i], at 110 [4th ed]; see Caldwell at 972-973). Delaney testified that he was not threatened by the special agent, and the record is silent as to whether Delaney had prior dealings with the police. We note that he was a mature man rather than a mere youth (see Gonzalez at 129-130) and, significantly, fully cooperated with the special agent to the extent that he repeatedly went inside his house, came out and gave him each animal (see id. at 130 [“Of course, if defendants had assisted the Federal agents in their search, this would be evidence of a voluntary consent”]).
There was no misrepresentation, deception or trickery on the special agent’s part leading Delaney to conclude that the special agent’s objective in being at Delaney’s home related to a form of criminal activity different from that which actually prompted him to be there (see 4 LaFave, Search and Seizure § 8.2 [n], at 133 [4th ed]). The special agent readily informed Delaney that he was from the ASPCA, which had received a complaint about the conditions of the animals. Delaney stated to the special agent that he was trying to get his friend Lewis, who also owned a number of the animals, to have them placed and that “If *53 you’re willing to put some pressure on him, I’m willing to do that.” The special agent said to Delaney, “I’m going to have to ask you sir, if it’s ok for you, to bring these animals out.” Thus, the People’s evidence included proof of an honest request by the special agent for Delaney’s consent to the search, and a rational motive for Delaney to give his consent. “[W]here the searching officer[ ] rel[ies] in good faith on the apparent capability of an individual to consent to a search and the circumstances reasonably indicate that that individual does, in fact, have the authority to consent, evidence obtained as the result of such a search should not be suppressed” (People v Adams, 53 NY2d 1, 9 [1981], cert denied 454 US 854 [1981]; People v Dean, 46 AD3d 1229, 1231 [2007]).
Lewis contends that the evidence obtained from Delaney is inadmissible against Lewis himself. We reject this argument. Delaney’s voluntary bringing of the animals outside to be inspected by the police was the functional equivalent of his giving consent for the police to enter the house and inspect the animals. Under the circumstances here, where Lewis was neither present at the “search” nor objected to it, and where Delaney and Lewis shared the responsibility of caring for the animals, the applicable rule is that evidence seized as the result of a search is “admissible so long as permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected” (People v Loomis, 17 AD3d 1019, 1020 [2005] [internal quotation marks and citations omitted]; cf. Georgia v Randolph, 547 US 103 [2006]).
With respect to the application of Lewis to suppress the evidence obtained on the date of his arrest, October 27, 2005, we are of the view that such evidence should have been deemed admissible notwithstanding the absence of Miranda warnings. Lewis was outside the Staten Island house and not in custody when he made the statements to the agent (see People v Rodney P. [Anonymous], 21 NY2d 1, 10-11 [1967]; Donnino, New York Court of Appeals on Criminal Law §§ 7:26, 7:27 [2d ed]). Contrary to the opinion expressed in the dissent, the evidence showed that the special agent had not as yet determined to arrest Lewis but had visited him to explain what was happening to the animals following their seizure.
“Assuming arguendo that there was a lack of probable cause to arrest or that suppression of the evidence was warranted, the court below was, in any *54 event, without authority to dismiss the accusatory instruments, because the determination of whether sufficient evidence remained to continue with the prosecution was a matter for the People to determine” (People v Asher, 16 Misc 3d 89, 91 [App Term, 9th & 10th Jud Dists 2007]; see People v Davidson, 9 Misc 3d 131 [A], 2005 NY Slip Op 51593[U] [App Term, 9th & 10th Jud Dists 2005]).
In reaching our determination, we have reviewed the evidence, including the videotape recordings depicting the conversations between defendants and the special agent, as well as the purportedly ill conditions of some of the animals. To the extent that the conditions of the animals can be gleaned from a viewing of the videotapes, we have serious doubts that the videotapes standing alone are capable of supporting convictions of the offenses charged. However, as the sole issue presented here involves the correctness of the order of the Criminal Court suppressing the evidence and dismissing the informations, we reverse said order and deny defendants’ motions.